659 F.2d 399
 108 L.R.R.M. (BNA) 2623, 92 Lab.Cas. P 13,017
 Jesse COLPO
v.
GENERAL TEAMSTERS LOCAL UNION 326 OF the INTERNATIONAL
BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN
AND HELPERS OF AMERICA; et al.
Raymond J. DONOVAN, Secretary of Labor, United States
Department of Labor,
v.
LOCAL 326, INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA,
Independent, Appellant.
 No. 81-1258.
 United States Court of Appeals,
Third Circuit.
 Submitted under Third Circuit Rule 12(6) on Sept. 14, 1981.
Decided Sept. 28, 1981.
 
 Roderick R. McKelvie, Robinson, McKelvie & Geddes, Wilmington, Del., for appellee Colpo.
 Robert E. Kopp, U.S. Dept. of Justice, Washington, D.C., Marshall Harris, Regional Sol., U.S. Dept. of Labor, Philadelphia, Pa., T. Timothy Ryan, Jr., Sol. of Labor, Beate Bloch, Associate Sol. Mary S. Elcano, Atty., U.S. Dept. of Labor, Washington, D. C., John X. Denney, Jr., Asst. U.S. Atty., Wilmington, Del., for appellee.
 Jacob Kreshtool, Sheldon N. Sandler, Bader, Dorsey & Kreshtool, Wilmington, Del., for appellant.
 Before GIBBONS and HUNTER, Circuit Judges, and GERRY*, District Judge.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge.
 
 
 1
 Local 326, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Independent (Local 326 or Local), appeals from an order setting aside the November 1979 election of its president and directing that a new election be held under the supervision of the Secretary of Labor, 504 F.Supp. 573. The order was entered in an action by the Secretary under Title IV of the Labor-Management Reporting and Disclosure Act of 1959, Pub.L. 86-257, Title IV, § 401 et seq.; 29 U.S.C. § 481 et seq. The complaint charges that Local 326 violated section 401(e) of the Act, 29 U.S.C. § 481(e), by denying to Jesse Colpo, a member in good standing, the right to be a candidate for President and thus denying to other Local members the right to vote for the candidate of their choice.[1] The trial court held that Colpo's disqualification as a candidate violated section 401(e).[2] We affirm.
 
 I.
 
 2
 Jesse Colpo, a member of Local 326, has been employed by Interstate Motor Freight System (the employer) in Wilmington, Delaware, since 1967. The employer and Local 326 are parties to the National Master Freight Agreement by which the employer assumed the responsibility for employee union dues payments through a check-off. Each month Local 326 certifies to the employer in writing a list of members with an itemized statement of dues or assessments owed. The employer is obliged to deduct these sums from wages if the member is on the payroll during the work week in which the check-off is actually made. The International Constitution, incorporated in Local 326's bylaws, requires that to be in good standing a member pay his dues "on or before the last business day of the current month." If an employee does not work on the week when a check-off is made it is his responsibility to make dues payments directly to Local 326 or cause his employer to make a double check-off in a subsequent payroll period. The system of accounts maintained by Local 326 is a "collapsible" dues accounting system, whereby dues collected in a current month are applied to previous arrearages.
 
 
 3
 Section 4(a)(1) of Article II of the International Constitution requires that to be eligible for office a member must be in continuous good standing for 24 consecutive months prior to nominations. By the operation of the "collapsible" dues accounting system it is possible that a default in payment of dues occurring more than 24 months ago will be carried forward continuously.
 
 
 4
 In December 1976 Local 326 submitted its monthly dues check-off list to the employer in accordance with the usual practice under the collective bargaining agreement. Jesse Colpo worked during every week in December, and his dues should have been deducted and paid over. However, the company failed to deduct Colpo's dues from his December wages. When Colpo's dues check-off resumed, payments were credited to the December arrearages, with the result that he was, according to Local 326's records, out of good standing from thence forward. In February 1978 a handwritten notation was placed on the monthly dues receipt issued by Local 326 indicating that he was one month behind, but giving no indication of the month in which the payment had been missed. Checking the payroll check stubs from his employer back to January 1977, Colpo found no missing dues payments, and took no further action. In March of 1978 the union steward told Colpo he was a month behind and offered to take him down to the Local's office to clarify the situation. Believing he was current, Colpo declined to act. Thereafter, each month the Local 326 bookkeeper made the same "one month behind" notation on his monthly dues receipt. However, when Colpo made arrangements for payments due for February, a month in which he did not work and during which there was no check-off, he was told that he was "paid up to date" as of May, 1979. The February 1979 arrearage was ultimately corrected in September 1979 pursuant to Colpo's August request that the employer make a double deduction.
 
 
 5
 On September 30, 1979 Jesse Colpo was nominated to run for President of Local 326. The Local ruled that he was ineligible to run for President because he had failed to maintain good standing for 24 months preceding his nomination.[3] At that point he paid in cash the dues which the employer had neglected to deduct in December 1976. This made him eligible to vote in the election, but not, according to the Local, to be a candidate. Colpo appealed the Local's decision to the International President, who sustained the ruling that the December 1976 arrearage, carried forward by the operation of the "collapsible" accounting system, made him ineligible. Thus he was not a candidate in the November 1979 Local 326 election.
 
 II.
 
 6
 The Secretary contends that the Local 326 action disqualifying Colpo as a candidate for President violated section 401(e) in two respects: first, the section protects employees who have authorized payroll deductions from ineligibility on account of employer defaults; second, the 24 month good standing rule, when coupled with the "collapsible" dues accounting method, is not a reasonable qualification for office within the meaning of the Act. The district court accepted the first ground, and we turn to it.
 
 
 7
 Local 326 interprets the sentence in section 401(e) dealing with dues check-offs to apply only to cases in which an employer has actually made a payroll deduction but has neglected to pay over the money to the union. It contends that Congress intended no more than to place on the union the risk of non-payment for reasons such as unlawful conversion by the employer or bankruptcy. The Secretary, pointing to the fact that section 401(e) is a part of Title IV of the Act, which was intended by Congress to "protect the rights of rank-and-file members to participate fully in the operation of their union through processes of democratic self government,"[4] urges that the Local's interpretation is inconsistent with that protective purpose. Title IV was aimed at correction of flagrant abuses which had in the past occurred in union elections. If an employer's failure to withhold authorized dues check-offs were to be excluded from coverage of the section the door could well be opened for collusion between candidates for election and cooperative employers in the manipulation of eligibility. Thus, the Secretary urges, section 401(e) should be construed to apply to any employer default. Moreover, the Secretary argues, that construction is consistent with the realities of the collective bargaining situation. The dues check-off is bargained for by the union, and enforcement of collective bargaining agreements is, generally speaking, in the union's control. The union should not be able to disqualify a member from participation in the union electoral process as a result of its own acquiescence in the employer's breach of the dues check-off clause in that agreement.
 
 
 8
 The district court noted that the relevant sentence in section 401(e) is sufficiently ambiguous that either interpretation, that of Local 326 or that of the Secretary, is at least permissible. The court concluded, however, that the Secretary's interpretation was more plausible in light of the overall legislative objects of Title IV. We agree. Moreover we note that the Secretary is in section 402(b) of the Act, 29 U.S.C. § 482(b), given important responsibilities for enforcement of Title IV. Faced as we are with an ambiguous statute, this seems an appropriate case in which to accord deference to the interpretation of it made by the agency charged with its enforcement.[5] It is, we note, an interpretation accepted by those few district courts which have had occasion to consider the question here in issue.[6] Thus the district court holding that Colpo's disqualification for the default of his employer in failing to check-off his union dues was prohibited by section 401(e) will be affirmed.
 
 
 9
 Because we affirm on the same ground relied upon by the district court, there is no need to pass upon the merits of the Secretary's additional ground for affirmance, the alleged unreasonableness of the International's 24 month good standing requirement when coupled with a "collapsible" dues accounting arrangement.
 
 
 10
 The judgment appealed from will be affirmed.
 
 
 
 *
 Honorable John F. Gerry, United States District Judge for the District of New Jersey, sitting by designation
 
 
 [1]
 The Secretary's case was consolidated with a private suit brought by Mr. Colpo under Title I of the Act, 29 U.S.C. § 411 et seq., charging that Local 326 and the International applied local and international constitutional provisions against him in a discriminatory manner. The district court found no evidence supporting the claim of discriminatory treatment
 
 
 [2]
 29 U.S.C. § 481(e) provides in relevant part:
 In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 of this title and to reasonable qualifications uniformly imposed) and shall have the right to vote for or otherwise support the candidate or candidates of his choice, without being subject to penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof.... No member whose dues have been withheld by his employer for payment to such organization pursuant to his voluntary authorization provided for in a collective bargaining agreement shall be declared ineligible to vote or be a candidate for office in such organization by reason of alleged delay or default in the payment of dues.... The election shall be conducted in accordance with the constitution and bylaws of such organization insofar as they are not inconsistent with the provisions of this subchapter.
 
 
 [3]
 The International subsequently found that the February 1979 arrearage had been corrected within a reasonable time and thus caused no loss in good standing
 
 
 [4]
 Wirtz v. Hotel, Motel & Club Employees Union, Local 6, 391 U.S. 492, 497, 88 S.Ct. 1743, 1746-47, 20 L.Ed.2d 763 (1968)
 
 
 [5]
 See Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 413-14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)
 
 
 [6]
 Wirtz v. Local 191, International Brotherhood of Teamsters, 226 F.Supp. 179 (D.Conn.1964); Goldberg v. Amarillo General Drivers, Local Union No. 577, 214 F.Supp. 74 (N.D.Tex.1963)