Raymond J. DONOVAN, Secretary of Labor, Appellee,

James Ricks, Appellant,

v.

LOCAL 6, WASHINGTON TEACHERS' UNION, AFL–CIO.

No. 83–2101.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 26, 1984.

Decided Oct. 30, 1984.

As Amended Oct. 30, 1984.

Oliver Denier Long, Bethesda, Md., with whom John V. Long, Bethesda, Md., was on the brief, for appellant.

John H.E. Bayly, Jr., Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., and Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before WRIGHT and WALD, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the court filed by Circuit Judge J. SKELLY WRIGHT.

J. SKELLY WRIGHT, Circuit Judge:

James Ricks, an unsuccessful candidate in the June 1983 election for the presidency of Local 6, Washington Teacher's Union (WTU), appeals a District Court order declaring that the election complied with the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA or the Act), 29 U.S.C. § 401 et seq. (1982), and directing that the candidates certified by the Department of Labor (DOL) serve as the duly

elected officers of the union. Ricks alleges that numerous substantive violations of LMRDA marred the conduct of the election and that DOL's certification was arbitrary, capricious, and inconsistent with the Act. He further alleges that the District Court committed several procedural irregularities in its disposition of his complaint.

We affirm the District Court in all respects but one. Even under the extraordinarily deferential standard of review set out by the Supreme Court in *Dunlop v. Bachowski*, 421 U.S. 560, 571–574, 95 S.Ct. 1851, 1859–1861, 44 L.Ed.2d 377 (1975), we find wholly inadequate the Secretary's treatment of Ricks' well-documented allegation that he was illegally prevented from distributing campaign literature. 29 U.S.C. § 481(c). On this one issue, therefore, we remand to the District Court with instructions to that court to order the Secretary of Labor to reopen consideration of the alleged violations and submit a fuller statement of reasons and explanation.

I. BACKGROUND

A. *Statutory Framework*

■ Following extensive investigations that revealed sometimes "shocking abuses" in the internal governance of labor organizations, S.Rep. No. 86–187, 86th Cong.; 1st Sess. 5 (1959) (hereinafter cited as *Senate Report*), Congress enacted the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 401 et seq., to "guarantee internal union democracy." *Senate Report* at 6. Title IV of the Act, 29 U.S.C. §§ 481–483, provides a number of procedural guarantees designed to assure free and open union elections. Among these guarantees are the right of every member in good standing to run for office, nominate candidates, and vote by secret ballot, *id.* § 481(a), (b) & (d), the right of any candidate to have an observer at the polls, *id.* § 481(c), and an enforceable duty on the part of union leadership to assure all bona fide candidates equal access to the elector-

ate in the distribution of campaign literature. *Id.* § 481(c).

Subsequent to an election, any union member who has exhausted internal remedies may file a complaint with the Secretary of Labor. *Id.* § 482(a). Following a mandatory investigation, the Secretary, if he finds probable cause to believe that a violation has occurred and that it has not been remedied, comes under a statutory obligation to bring a civil action against the union in federal court to set aside the election. If, after trial, the court finds by a preponderance of the evidence that the election did not comply with LMRDA and that any violation "may have affected the outcome of the election," the court "shall" declare the election void and direct the Secretary to conduct a new election under his supervision. *Id.* § 482(c). If, however, the supervised election satisfies the requirements of the Act, the Secretary must certify the names of those elected and request that the court issue a decree declaring them to be the duly elected officers of the union. *Id.*

### B. *Factual Background*

The election at issue in this case is the *third* that WTU has attempted to conduct. At the request of the Secretary of Labor, the District Court nullified the results of the first two elections for gross violations of LMRDA.

WTU conducted the *first* election on May 18, 1981. In this election, as in the two later elections, the rank and file were presented with several slates, each with over 20 candidates for various positions in the union leadership. Votes could be cast for candidates individually, although the results suggest that most union members voted by slate. The first election, which was conducted without DOL supervision, resulted in the election of the entire incumbent slate.

Ricks filed an administrative complaint with the Secretary pursuant to 29 U.S.C. § 482(a). Following his statutorily required investigation, the Secretary found numerous violations of Sections 481(a) and 481(b) of the Act, including denial of a reasonable opportunity to nominate candidates and failure to conduct the election by secret ballot. The Secretary requested an order nullifying the election in its entirety and directing that WTU conduct a new election under his supervision. The District Court, after a trial limited to the issue of the secret ballot violation, granted the order in full.

Balloting for the *second* election (the first supervised election) took place between March 1 and March 19, 1983 under DOL supervision. Twenty-five hundred votes were cast. Ricks won the union presidency by a four-vote margin and his running mate, Jeanette Feely, was elected vice president by 21 votes. The other 19 victors were members of the slate of the incumbent president, William H. Simons. Almost immediately various union members and their representatives, including Ricks' counsel, filed protests claiming that numerous serious violations of LMRDA had occurred. The Secretary agreed, finding that Ricks had been deprived his statutorily protected right to an equal opportunity to mail campaign literature, 29 U.S.C. § 481(c), and that at least 13 and possibly more fraudulent ballots had been cast. Affidavit of Richard G. Hunsucker, Director, Office of Labor-Management Standards Enforcement, United States Department of Labor, May 5, 1983 (Hunsucker I), at 3–4, *reproduced in* Appendix for Appellee (App. I) at 48–49. These ballots had been mailed to union members and returned to the union office as undeliverable. Somehow, they ended up in the ballot box. Believing that "it is impossible to gauge exactly how many votes were cast in this manner," *id.* at 4, App. I at 49, on May 9, 1983 the Secretary petitioned the District Court to order a second supervised election for all offices. On May 10th the court nullified the March 1983 election and directed WTU to conduct yet another election, again under DOL supervision.

Ricks objected to that part of the District Court's order requiring that the second supervised election include the offices of

president and vice president. In Ricks' view, he and Feely had won the second election *in spite of* the illegal conduct of the incumbent leadership. Reasoning that the incumbents should not be able to profit from their own misconduct, and that the fraud could not have "affect[ed] the outcome" of the election for those two offices, 29 U.S.C. § 482(c)(2), he argued that the supervised reelection should only be for the other positions. On June 2, 1983, treating Ricks' objection as a motion to reconsider the May 10th order, the District Court rejected the argument. Finding that "plain old voter fraud * * * makes this whole election worthless," Transcript of June 2, 1983 Proceedings (Tr.) at 4, the court held that a new election for all of the positions was necessary.

The *third* election—the subject of this appeal—was conducted under DOL supervision on June 18, 1983 and resulted in the defeat of Ricks and Feely and the election of all of the candidates on the incumbent slate. Ricks again protested the results of the election. But this time, after investigation, the Secretary found that whatever minimal violations of LMRDA occurred in the course of the election could not have "affect[ed] the outcome." 29 U.S.C. § 482(c)(2). Accordingly, he moved for a court order certifying the election and declaring the victorious candidates the duly elected officers of WTU. Certification of Election, August 12, 1983, App. I at 61–62. The District Court granted the order in full, Order and Judgment, September 29, 1983, App. I at 77–78, and this appeal followed.

## II. ANALYSIS

### A. *Standard of Review*

In *Dunlop v. Bachowski, supra,* the Supreme Court set out the appropriate standard for reviewing a decision by the Secretary of Labor not to bring a civil action to set aside a union election for violations of LMRDA. In *Usery v. Local U. No. 639, Int'l Bhd of Teamsters,* 543

F.2d 369 (D.C.Cir.1976), *cert. denied,* 429 U.S. 1123, 97 S.Ct. 1159, 51 L.Ed.2d 573 (1977), this court held that the *Dunlop* standard of review applied as well to the Secretary's decision to certify an election as valid. Because of the special expertise of the Secretary of Labor and the congressional objective of "settl[ing] as quickly as possible the cloud on the incumbent's title to office," *Wirtz v. Local 153, Glass Bottle Blowers Ass'n,* 389 U.S. 463, 468 n. 7, 88 S.Ct. 643, 647 n. 7, 19 L.Ed.2d 705 (1968), the *Dunlop* standard of review is "much narrower than applies under 5 U.S.C. § 706(2)(a) [the arbitrary and capricious standard of the Administrative Procedure Act]." *Usery, supra,* 543 F.2d at 378. More specifically:

> Except in what must be the rare case, the court's review should be confined to examination of the "reasons" statement, and the determination whether the statement, without more, evinces that the Secretary's decision is so irrational as to constitute the decision arbitrary and capricious. Thus, review may not extend to cognizance or trial of a complaining member's challenges to the factual bases for the Secretary's conclusion either that no violations occurred or that they did not affect the outcome of the election. The full trappings of adversary trial-type hearings would be defiant of congressional objectives * * *. * * *

*Dunlop v. Bachowski, supra,* 421 U.S. at 573, 95 S.Ct. at 1860. Though highly solicitous of the Secretary's views, the *Dunlop* Court made clear that his latitude was not boundless. At a minimum, he must submit a statement of reasons that is "adequate to enable the court to determine whether the * * * decision was reached for an impermissible reason or for no reason at all." *Id.* Thus the "statement of reasons should inform the court and the complaining union member of both the grounds of decision and the essential facts upon which the Secretary's inferences are based." *Id.* at 573–574, 95 S.Ct. at 1861. With this standard of review in mind,[1] we now turn to Ricks' many allegations.

1. We review, of course, not the Secretary's decision to certify a union election, but a District

## B. *The LMDRA Violations*

Ricks alleges seven separate violations of LMRDA. For convenience we divide them into two sections. *First,* pointing to no specific provision, Ricks maintains that the District Court violated the spirit of the Act by requiring a new election for the positions of president and vice president even though, in Ricks' view, the record suggests that the incumbents were responsible for thè LMDRA violations. *Second,* he alleges six specific violations of the Act: (1) that WTU breached its statutory obligation to reopen the nominating process prior to conducting the June 18, 1983 supervised election; (2) that Ricks' observers were prevented from observing bank checks used to establish voter eligibility; (3) that ballots were received by individuals not on any list; (4) that "functional chapter" members were permitted to vote in the election though ineligible under the union's by-laws and constitution; (5) that some members who had not paid their dues were permitted to vote though they were ineligible under the union's by-laws and constitution; and (6) that Ricks supporters were prevented from distributing campaign literature. Of these claims, only the last has merit.

1. *Requiring Ricks to run in the third election.* Ricks maintains that the District Court erred in requiring him to run in the third election. He reasons that he won the second election in spite of the illegal efforts on the part of the union to thwart his bid, and asserts that it would be inequitable for the victors of the third election to profit from their own misconduct. The Secretary argues that deference should be paid to his findings and those of the District Court that the fraud in the second election was so pervasive that ordering a rerun election for all offices was appropriate. He also argues that LMRDA's concern is not just

with the interests of the competing candidates but also with the integrity of the electoral process. He derives from this unassailable proposition the argument that notions of equity, such as the clean hands doctrine, have no place in LMRDA analysis.

▇▇▇ Without question, the Act embodies a "vital public interest in assuring free and democratic union elections that transcends the narrower interest of the complaining union member." *Wirtz v. Local 153, Glass Bottle Blowers Ass'n, supra,* 389 U.S. at 475, 88 S.Ct. at 650. *See also Local 3489, United Steelworkers v. Usery,* 429 U.S. 305, 309, 97 S.Ct. 611, 614, 50 L.Ed.2d 502 (1977). But beyond this general concern with the integrity of the electoral process, Congress sought to "prevent, discourage, and make unprofitable" improper conduct by entrenched union leadership. *Senate Report* at 5. Given this objective, we find it inconceivable that Congress intended to permit an incumbent union faction to abuse the Section 482(c) remedy by intentionally violating LMRDA's provisions and then, if defeated, invoking those violations as the basis for rerunning the election.[2] *See Marshall v. Local 1010, United Steelworkers,* 664 F.2d 144, 151 (7th Cir. 1981).

Thus we agree with Ricks that, when faced with intentional misconduct by defeated incumbents, the District Court may, consistent with the letter and spirit of LMRDA, exercise its discretion and not require a Section 482(c) reelection. Under this standard, however, the District Court did not err in requiring a reelection for *all* offices, including those lost by the incumbents in the second election. Ricks himself admits that he "cannot prove," brief for appellant at 24, that the Section 481(c) vio-

---

Court order implementing that decision. We consider the rationality of the Secretary's certification and the adequacy of his explanation to be questions of law. Thus our review of the District Court's treatment of those questions is not limited to the "clearly erroneous" standard.

**2.** Reading this measure of flexibility into the application of § 482(c) comports with the con-

gressional objective of creating "a judicial remedy appropriate for each specific problem." *Senate Report* at 7. *See also Usery v. Int'l Org. of Masters, Mates & Pilots,* 538 F.2d 946 (2d Cir.1976) (suit under § 482 is essentially an equitable proceeding).

lations were intentional, and neither the District Court nor the Secretary so found. The history and climate of the election make plausible Ricks' claim that the incumbents were responsible for the fraudulently cast ballots. But, based on our extensive review of the record, we cannot say that the District Court erred in failing to attribute intentional violations to the incumbents.

Thus appellant's claim that the District Court erred in requiring a rerun of the presidential and vice presidential elections must stand or fall on whether the fraud tainted the election for all offices and, accordingly, "may have affected the outcome" within the meaning of Section 482(c)(2). *Usery v. Stove, Furnace & Allied Appliance Wkrs*, 547 F.2d 1043, 1047 (8th Cir.1977). The Secretary explicitly found that at least 13 fraudulent ballots were voted and concluded, after thorough investigation, that "it is impossible to gauge exactly how many votes were cast in this manner." Hunsucker I at 4, App. I at 49. These underlying factual determinations, fully set out by the Secretary, are not open to judicial reassessment. We find the Secretary's conclusion that the fraud "may have affected the outcome" of all positions in the second election fully supported and entirely rational. Under the controlling standard of review, therefore, our task is at an end.

### 2. *The six specific allegations.*

■ a. *Failure to reopen the nomination process.* In conducting the June 18, 1983 election, the Secretary did not reopen the nominating process. Instead, reasoning that this was to be a rerun of the now-nullified second election, he limited the candidates to those who had been nominated to run in that election. Ricks alleges that failure to reopen the nominating process violates 29 U.S.C. § 481(c), which requires that union members in good standing be permitted to participate in nominating candidates for "any election."

The argument is plainly incorrect. Section 481(c) does speak in general terms about "any election." However, neither the purpose of the provision nor any case law construing it undermines the Secretary's eminently reasonable view that the nominating process need not be reopened when a court orders a supervised reelection. Given Congress' clear intent to expedite the certification of a valid election, *Wirtz v. Local 153, Glass Bottle Blowers Ass'n, supra*, 389 U.S. at 468 n. 7, 88 S.Ct. at 647 n. 7, and the absence of any suggestion that the nomination process itself was tainted,[3] the Secretary's construction of the statute comports with common sense and merits deference.

■ b. *Preventing Ricks' observers from verifying voter eligibility.* Ricks maintains, and the Secretary does not dispute, that Ricks' supporters were not permitted to observe cancelled checks that showed timely payment of dues and were the basis for determining voter eligibility. The parties vigorously disagree over whether this conduct violated the Act. Ricks points to Section 481(c), which mandates "[a]dequate safeguards to insure a fair election * * *, including the right of any candidate to have an observer at the polls and at the counting of the ballots." The Secretary suggests, without more, that the request was made at an "inopportune moment during the tally." Affidavit of Richard G. Hunsucker, August 12, 1983 (Hunsucker II) at 12, App. I at 74. We doubt that this unsupported statement satisfies even the minimal demands imposed by *Dunlop*. The Secretary did, however, provide ample factual support for his conclusion that the violation could not have "affected the outcome" and thus could not be the basis for overturning the election. 29 U.S.C. § 482(c)(2). He conducted an investigation, traced all of the checks to the union's itemized bank deposit slips, and

---

**3.** Ricks does not contest the Secretary's finding that the violations that occurred in the course of the first supervised election did not affect the nomination process. Hunsucker II at 12, App. I at 74.

concluded that all were genuine. Hunsucker II at 5, App. I at 67. Under the *Dunlop* standard of review, this fully supported and uncontested conclusion is not open to judicial reassessment.

■ c. *The mismailing of ballots.* Three nonmembers somehow received ballots in the mail. Hunsucker II at 9, App. I at 71. Ricks suggests that the mismailing should have triggered suspicion of more substantial fraud. But because the Secretary explicitly found, and appellant does not contest, that the three ballots in question were not voted, Ricks cannot seriously allege an LMRDA violation or credibly suggest that the mismailings "may have affected the outcome" of the election. Appellant's assertion on this ground is frivolous.

■ d. *Permitting functional chapter members to vote.* The Act requires the Secretary to give effect to a union's constitution and by-laws to the extent that they are consistent with the statutory scheme. 29 U.S.C. § 481(e); *Usery v. Local 639, Int'l Bhd of Teamsters, supra,* 543 F.2d at 371. Ricks insists that the Secretary permitted "functional members" to vote even though the WTU constitution denies them the franchise. Article IV, Section 1b of the WTU by-laws defines "Functional Chapters" as "employees in other groups organized by the Union." Constitution and By-Laws, WTU Local 6, March 16, 1981, *reproduced in* Appendix of Appellant (App. II) at 11. Article III of the WTU constitution provides:

> All personnel employed or retired by the Board of Education, except officers charged with the assignment, scheduling, rating or promotion of such personnel, and workers in other groups organized by the Union [functional members], shall be eligible for membership. * * *

App. II at 8. The quoted provision leaves ambiguous whether the "functional members" language is part of the "except" clause or a continuation of the category enumerated in the first line. The Secretary's construction of the provision is eminently plausible. Indeed Section 411(a)(1), which gives "[e]very member of a labor organization * * * equal rights * * * to vote," may well require that construction. Ricks offers not a single reason for resolving the statutory ambiguity in favor of excepting functional members from eligibility. In any case, given the Secretary's expertise, deference is appropriate.

■ e. *Permitting members whose dues were in arrears to vote.* WTU By-Law Article IV § 2 requires that "[a]ll members except retired members shall pay their dues by payroll deduction, or in full by November 10th * * *." App. II at 11. Article III § 3 renders ineligible all members whose dues are more than 90 days in arrears. *Id.* at 10. The Secretary counted the 90-day period from November 10th and permitted members to vote provided they had paid dues by February 8, 1983. Ricks claims that anyone not paid in full by November 10th should have been declared ineligible. As with the "functional member" ambiguity, the language of the WTU by-laws leaves unresolved whether the 90-day arrearage period should begin or end on November 10. In our view, the Secretary's construction is the most natural reading. In any event, his interpretation of the WTU by-laws is entirely reasonable and, under the *Dunlop* standard of review, deference is appropriate.

■ f. *Impeding the distribution of campaign literature.* Far more troubling is the Secretary's treatment of Ricks' allegation that the union leadership systematically thwarted his statutorily protected right to distribute campaign literature. Numerous affidavits recount incidents in which, for example, such literature was removed from school mailboxes before the intended recipients had an opportunity to read it. *See, e.g.,* Affidavit of Frances McFall, June 25, 1983, *reproduced in* App. II at 80. If attributable to the union leadership, such interference constitutes a clear violation of Section 481(c) of the Act, and certification of the election would be improper if the infraction "may have affected the outcome of the election." 29 U.S.C. § 482(c).

In certifying the results of the June 18, 1983 election despite Ricks' allegation on this point, the Secretary did not contest any of Ricks' copious documentation. Instead, he offered the following statement:

> In each instance, where one form of campaigning was denied initially, another was present, an alternate means to complete the campaign task was devised or inadequate attempts were made. There is no evidence that the candidates were not uniformly treated at each of the schools. Accordingly, either the violation was remedied in a timely manner or no violation occurred to justify upsetting the election.

Hunsucker II at 8, App. I at 70. Under *Dunlop, supra,* 421 U.S. at 573, 95 S.Ct. at 1860, a court must defer to the Secretary's conclusions provided only that they are rational and that he has offered a statement of reasons that informs the court of both the "grounds of decision and the essential facts upon which the Secretary's inferences are based." *Id.* at 574, 95 S.Ct. at 1861. Even under this deferential standard, the Secretary's treatment of Ricks' allegations is inadequate.

The factual basis for the conclusion that "alternate means" of campaigning were "devised" is by no means clear.[4] If we give the Secretary the benefit of the doubt, however, it is possible to conclude that Ricks' opportunity to mail literature or to campaign outside polling stations was the basis for *this* finding. Hunsucker II at 8–9, App. I at 70–71; Transcript of Trial at 113–114. But the first sentence of the Secretary's statement is in the disjunctive, and nowhere does the Secretary provide even the most cursory statement of the facts underlying his conclusion that Ricks made inadequate attempts to circumvent the interference with his statutorily protected right to distribute campaign literature. Nor does he defend the dubious proposition that the degree of Ricks' failure to vitiate someone else's illegal conduct is a permissible consideration at all. More-

over, the statement that "there is no evidence that the candidates were not uniformly treated" is directly at odds with the extensive documentation provided by Ricks. If the Secretary has reasons for not crediting the many affidavits that directly contradict his conclusions, he must offer at least a cursory explanation. The conclusory assertion that "no evidence" suggests discriminatory treatment simply is not "adequate to enable the court to determine whether the * * * decision was reached for an impermissible reason or for no reason at all." *Dunlop, supra,* 421 U.S. at 573, 95 S.Ct. at 1861.

Finally, the last line of the Secretary's explanation appears to suggest that even if violations occurred they did not affect the outcome of the election. While deference to this conclusion ordinarily is appropriate, in this case it is not warranted. Given that in the *second* election the Secretary concluded that extensive interference with campaign literature distribution did affect the outcome, Hunsucker I at 4–5, App. I at 49–50, and that the Secretary has offered no factual basis whatever for disregarding the substantial allegations of interference in the *third* election, the perfunctory and cryptic suggestion that such interference could not have affected the election's outcome is insufficient to satisfy even *Dunlop*'s minimal demands.

## C. *The Procedural Claims*

In addition to his allegation of substantive LMRDA violations, appellant asserts two procedural bases for reversing the decision of the District Court. Neither need detain us long.

First, Ricks claims that the District Court failed to permit him adequate time to respond to the Secretary's motion to rerun the second election. On May 9, 1983 the Secretary moved for an order declaring that the second election was void and directing that he conduct a third election

---

**4.** Remarkably, in a supplemental explanatory memorandum submitted in response to a question at oral argument, counsel for the Secretary supports his assertion that alternate means were available by citing the many affidavits alleging discrimination against the Ricks campaign.

under his supervision. The District Court granted the order on May 10. Ricks argues that in acting so swiftly the court did not afford him adequate time to file a response opposing that part of the order requiring a new election for all union officers. In particular, he alleges violation of Fed.R.Civ.P. 6(e) (three extra days for service by mail) and Local Rule 1–9(d) (ten days to oppose motion), which he reads together to afford him a mandatory 13 days to respond.

Even were we to conclude that the District Court's disposition of the May 9 motion was premature, we would consider it a mindless celebration of form to reverse on this ground. Ultimately the court, treating the procedure as a motion for reconsideration, permitted Ricks to file a written memorandum [5] and, on June 2, to present his objections orally. Tr. at 4. Appellant makes no effort to argue that the court failed to afford him an opportunity to be heard, or that the court applied a different standard of review to the motions for reconsideration than it would have to the original motion. Ricks has had his "day in court." Nothing would be gained by requiring the District Court to go through the motions of rehearing argument on a question it has already fully considered and resolved, and we decline the invitation to remand for so pointless an exercise.

Finally, Ricks alleges that the District Court should have treated the Secretary's motion to certify the June election as a motion for summary judgment. This circuit has clearly held that the full panoply of summary judgment procedures do not apply to motions to certify union elections. *Usery v. Local No. 639, Int'l Bhd of Teamsters, supra,* 543 F.2d at 378. Ricks, however, finds in *Usery* a negative inference that under the proper conditions—all, he maintains, satisfied here—summary judg-

ment is the required procedure. Apparently, the motivation for his claim is the belief that the trial court must hold an evidentiary hearing if the nonmoving party alleges the existence of material disputes of fact.

The argument is plainly incorrect. Whatever label we attach to it, the appropriate procedure for reviewing DOL decisions to certify union elections is set out in *Usery v. Local 639, supra,* which in turn borrowed the methodology announced in *Dunlop, supra,* 421 U.S. at 573, 95 S.Ct. at 1860. The District Court clearly applied the correct approach. At bottom, Ricks is seeking the "full trappings of adversary trial-type hearings," an approach that "would be defiant of congressional objectives." *Id.*

### III. CONCLUSION

Of Ricks' numerous claims, only one has merit. Following the Supreme Court's direction in *Dunlop v. Bachowski,* this circuit will defer to the decision of the Secretary of Labor to certify a union election provided only that he supply a brief statement setting out the factual basis for his conclusions and that those conclusions are rational. Even under this highly deferential standard, we find inadequate the Secretary's treatment of Ricks' allegations of illegal interference with the distribution of campaign literature. *Dunlop* holds that the appropriate procedure in this circumstance is to remand to the District Court with instructions to direct the Secretary to explain more fully the basis of his decision to certify. In all other respects, the decision below is affirmed.

*Affirmed in part and remanded in part.*

---

5. On May 23 appellant filed a memorandum in opposition to appellee's motion for entry of an order directing a new election. We have not been able to review the contents of that memorandum because the document itself was not in the record transmitted to us by the District Court. The description in the docket sheet, however, makes clear that the memorandum concerned the question whether a new election should be held for all officers. In any event, the District Court heard oral argument on the question on June 2. The transcript of that proceeding indicates that the issue received full consideration at that time. Tr. at 4.