Raymond J. DONOVAN, Secretary of Labor, Plaintiff,

and

James Ricks, Plaintiff-Intervenor,

v.

LOCAL 6, WASHINGTON TEACHERS UNION, AFL–CIO, Defendant.

Civ. A. No. 81–2816.

United States District Court, District of Columbia.

April 3, 1986.

John H.E. Bayly, Jr., Asst. U.S. Atty., Washington, D.C., for plaintiff.

Oliver Denier Long, Long, Henley & Long, Bethesda, Md., for intervenor-plaintiff.

## MEMORANDUM AND ORDER

AUBREY E. ROBINSON, Jr., Chief Judge.

For the Court's consideration is a petition for attorneys' fees and costs arising out of an action under the Labor–Management Reporting and Disclosure Act of 1959, as amended, 29 U.S.C. § 481 *et seq.* (LMRDA).

### I. BACKGROUND

This action concerns the conduct of several elections held by the Washington Teachers' Union (WTU). The first of these, held on May 18, 1981, resulted in James Ricks, an unsuccessful candidate for President, filing an administrative complaint with the Secretary of Labor pursuant to 29 U.S.C. § 482(a). Finding numerous violations of the Act, the Secretary filed a complaint in this Court requesting that the election be nullified and a new election held. Ricks was permitted to intervene in the action. Two supervised rerun elections later, the Secretary finally certified the results over a challenge and an appeal by Ricks. Ricks' attorneys—Oliver Denier Long, Kenneth Henley, John V. Long, and Patrick B. Shaw—now seek fees and costs from WTU totalling $83,297.36.

### II. ANALYSIS

The Court of Appeals for this Circuit has approved awarding attorneys' fees and costs to intervenors in Title IV suits under LMRDA. *Usery v. Local No. 639, International Brotherhood of Teamsters,* 543 F.2d 369 (D.C.Cir.1976). The rationale of *Usery* is that Title IV cases are like other cases under LMRDA where "courts have uniformly applied a 'common benefit' analysis to award attorneys' fees to private litigants." *Id.* at 382.

Significantly, in none of these decisions was there a statutory provision that ex-

William B. Peer, Barr & Peer, Washington, D.C., for defendant.

pressly authorized the award made. Rather, the governing rationale was that union members by bringing suits against their union help vindicate the statutory policy in favor of union democracy which necessarily redounds to the benefit of the entire membership.

'Fee-shifting' is particularly appropriate because of the clear match between the party assessed and the beneficiary of the litigation.

*Id.* at 383.

The key, then, to determining whether a particular case is appropriate for the award of fees is whether at each stage of the litigation the union received a common benefit. It is therefore the Court's first task to chart the course of the litigation from Ricks' initial complaint to his final appeal and determine at each point whether his attorneys rendered "material assistance to the Secretary and the court in the interest—of the public and the union rank and file—in union democracy." *Id.* at 384.

## A. STAGES OF THE LITIGATION

### 1) Period Before the Secretary of Labor Filed Suit: April 1981—November 1981

In April, 1981, Ricks requested the law firm of Long, Henley & Long to represent him in this action. On Ricks' behalf the firm exhausted internal union remedies and filed a protest of the election with the Secretary of Labor. Defendant does not oppose the award of fees for this period and because this activity meets the common benefit standard fees shall be awarded.

### 2) Period After the Secretary of Labor Filed Suit Through the Course of the Trial: December 1, 1981—November 21, 1982

After Ricks intervened in the Secretary's action, his counsel claim to have played a "leading role in the investigation and prosecution of the litigation." Defendant counters, without evidence, that Ricks' efforts were "merely duplicative of the efforts of the Secretary." Supporting the attorneys' request for fees during this period are affidavits from Assistant United States Attorney John Bayly, Jr. and Susan Webman, counsel for the United States Department of Labor. Both state that Ricks' lawyers were helpful. Webman says that Ricks' attorneys helped locate witnesses for trial and provided the Department with synopses of anticipated testimony. Because the attorneys' evidence establishes that their services were helpful to the ultimate outcome of the trial, which was to overturn an unfair election, and because this outcome was important in the vindication of union democracy, they shall receive an award of fees for this period.

### 3) Supervising and Challenging the First Rerun Election: November 22, 1982—April 6, 1983

According to the affidavit of Oliver Long, after trial he participated in a pre-election conference, advised the Labor-Management Services Administration (LMSA) regarding the conduct of the rerun election, attended the election tally and prepared protests filed with LMSA. He claims that his work "was instrumental in identifying to the Department of Labor both mailing list irregularities and the counting of votes by individuals who never cast a ballot." Defendant counters, again without evidence, that Intervenor did not render material, compensible assistance during this period. This is the sum of the evidence concerning this period of the litigation. Because Defendant has offered nothing under oath to refute Long's affidavit, Long shall receive fees for his work. There is no evidence to refute Long's statement in his memorandum that he persuaded the Secretary of Labor not to certify the results of the rerun election through his work during this period.

### 4) Opposing the Department of Labor: April 7, 1983—End of Appeal

Ricks' attorneys also seek fees for several unsuccessful actions they took against the Department of Labor. First, they seek fees for the time spent on their unsuccessful Motion for a Temporary Restraining Order or Preliminary Injunction

against the Secretary of Labor. They also seek fees for their unsuccessful efforts to exclude the offices of president and vice president from the second rerun election. (Ricks had been elected president of the union in the first rerun election. The Court decided that a re-election was necessary for all offices.) Intervenor offers no evidence that this work gave the union a common benefit. Defendant's position seems more plausible—that the attorneys were interested in Ricks alone and that the union cannot be equitably charged for this work. Intervenor's actions merely delayed the second rerun election unnecessarily.

Beginning in June, 1983, Intervenor's efforts were spent opposing the certification of the second rerun election. There is no evidence that this appeal provided a common benefit to the Union, although Petitioner claims that by obtaining an adequate statement of reasons for the certification he "promote(d) union democracy" and conferred a benefit on the union generally.

The WTU shall not have to pay for the work done during this period. The union gained little if anything from finding out why the second rerun election was not invalid. Additionally, of the nine grounds for appeal asserted by Intervenor, only one accomplished the limited success of requiring the Department of Labor to explain more fully why it certified the election. Of the other grounds, the Court of Appeals in *Donovan v. Local 6, Washington Teachers' Union, AFL–CIO*, 747 F.2d 711 (D.C. Cir.1984), called two "plainly incorrect," *Id.* at 717, 720, one "frivolous," *Id.* at 718, one unsupported by "a single reason," *Id.*, and one asking for relief that would be a "pointless exercise." *Id.* at 720.

### 5) *Fees Incurred in Preparation of the Fee Application*

■ Although WTU claims that it did not receive a common benefit from the hours petitioners spent on their fee applications, this Court has awarded fees for such work. *See e.g., Laffey v. Northwest Airlines, Inc.,* 746 F.2d 4 (D.C.Cir.1984); *Elmore v. Shuler,* Civil Action No. 81–0278 (D.C.D.C.1985).

In sum, the application of the common benefit principle to the facts of the case at hand, results in the conclusion that Intervenor's attorneys shall receive fees for their work from April 1981 through April 6, 1983, plus their reasonable hours spent on the fee applications.

### B. THE LODESTAR

Once it has been determined that Petitioner is entitled to some award of fees, the next step is to determine the lodestar—the number of hours reasonably expended, multiplied by a reasonable hourly rate. "The figure generated by that computation is the basic fee from which a trial court judge should work." *Copeland v. Marshall,* 641 F.2d 880 (D.C.Cir.1980).

### a. *Amount of Time Reasonably Expended*

During the two years of this litigation for which Petitioners are entitled to fees, 264.4 hours are claimed as follows:

| TIME PERIOD | | HOURS CLAIMED |
|---|---|---|
| 1. April 1981 – November 1981 | Henley | 10.0 |
| | J. Long | 0.3 |
| | Shaw | 54.1 |
| 2. December 1, 1981 – November 21, 1982 | O. Long | 125.4 |
| | J. Long | 3.0 |
| | Henley | 0.6 |
| 3. November 22, 1982 – April 6, 1983 | O. Long | 67.5 |
| | J. Long | 3.0 |
| | Henley | 0.5 |

(These figures do not include the hours claimed for the preparation of the fee applications, which will be addressed below.) The Court holds that this amount of time was reasonably expended and does not include hours which are nonproductive, excessive, redundant or otherwise unnecessary. Therefore, Petitioners shall be awarded fees for the 264.4 hours they spent.

■ Petitioners also claim fees for the 44.9 hours they spent preparing fee applications. This amount of time is excessive. For the applications presented, 20 hours is reasonable and shall be awarded. The total number of hours reasonably expended in this litigation therefore is 284.4.

### b. *Reasonable Hourly Rate*

■ "An attorney's customary billing rate is presumptively his reasonable hourly rate for determining an award of attorneys fees." *Laffey v. Northwest Airlines, Inc.,* 746 F.2d 4, 15 n. (D.C.Cir.1984). When necessary, the Court may look to the rate "prevailing in the community for similar work." *Copeland* at 892. Using these guidelines, the Court shall determine the reasonable hourly rate of each of the four attorneys in this action.

1.) *Oliver Denier Long* has been an attorney since December 30, 1976 and a member of the District of Columbia Bar since June 2, 1977. Affidavit paragraph 15. (May 19, 1983). He has engaged in the general civil practice of law with a concentration in labor law. Affidavit paragraph 16. During the period of this lawsuit, he charged clients $100 per hour to represent them in labor-related matters. Affidavit paragraph 18. $100 per hour is therefore presumptively reasonable for him and shall be used in the lodestar calculation.

2.) *Patrick Shaw* became an attorney in 1975 and was admitted to the Bar of the District of Columbia in 1979. Affidavit paragraph 3. Since graduation from the Indiana University School of Law, he has specialized in the field of labor law. Affidavit paragraph 5. He "performed legal services for James Ricks in 1981 consisting of 54.1 hours at $65 per hour." Affidavit paragraph 1. He also states that the average rate he charged clients on labor relations matters was $65 in 1981. Affidavit at paragraph 10. $65 shall therefore be used in the lodestar as Shaw's reasonable hourly rate.

3.) *Kenneth Henley* did not submit an affidavit in support of his petition for fees. The July 11, 1985 affidavit of Oliver Long, however, states that he graduated from Villanova University Law School in 1978. He became a partner of Long, Henley & Long in 1982. Before that, his practice at the firm was devoted exclusively to labor law. Affidavit paragraph 3. His work with the firm consisted primarily of representing labor union locals which paid a retainer of $5,500 per month for the first 100 hours of legal services and $65 for each hour thereafter. Affidavit paragraphs 2, 3. He also represented other labor and non-labor clients at an average rate of $75 per hour. Affidavit paragraphs 3, 5. The Court shall use $75 per hour as Henley's rate in the lodestar calculation.

4.) *John Long* also did not submit an affidavit in this matter detailing his qualifications and customary fee. The only information submitted to the Court with regard to Long is that his average hourly rate in non-labor cases was $100 in 1982 and 1983. July 11, 1985 affidavit of Oliver Long paragraph 5. Long claims $100 per hour as his fee for this litigation.

After consideration of the affidavit of Mozart Ratner and the other evidence presented by Petitioners, the Court shall use $100 per hour as John Long's fee in the lodestar calculation. (It is noteworthy that although WTU protests the use of $100 per hour as being too high, it has presented no evidence under oath to refute its reasonableness.)

Given the number of hours spent by each attorney and his reasonable hourly rate, the lodestar fee in this case is $24,269.00 broken down as follows:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Oliver Long | 192.9 | $100 | $19,290.00 |
| Patrick Shaw | 54.1 | $ 65 | $ 3,516.50 |
| Kenneth Henley | 11.1 | $ 75 | $ 832.50 |
| John Long | 6.3 | $100 | $ 680.00 |
| | | | $24,269.00 |

### C. ADJUSTMENTS TO LODESTAR

■ Petitioners seek a recovery risk and delay multiplier in this case. They ask that the lodestar fee be increased by 50% because of the delay in payment of their fee and the risk they took that no judgment for attorneys' fees might have been entered in their favor.

It is established law that "[t]he burden of justifying any deviation from the 'lodestar' rests on the party proposing the deviation." *Copeland* at 892 (citing *Lindy Bros. Builders, Inc. v. American Radiator and Standard Sanitary Corp.,* 540 F.2d 102, 118 (3rd Cir.1976) (en banc) ("Liddy II"). The record in this case does not warrant such an upward adjustment.

**6**

Nothing in the record indicates that the attorneys in this case faced more than the usual risk present in all litigation. Additionally, the delay in the recovery of fees in this action is very much a result of Ricks' decision to oppose the certification of the results of the second re-run election. WTU shall not have to pay for this decision.

### D. COSTS

The final issue to be decided by the Court is the amount of costs reasonably expended. From May 1981 through May 17, 1983, Petitioners spent $1,135.04. Of this, $500 was a professional fee to Mozart Ratner. Because Ratner's involvement in this action was limited to submitting an affidavit in support of the fee application, an affidavit incidentally that Oliver Long billed 0.8 hours for preparing (*see* entry for 5/5/83 on Detailed Summary of Time), Petitioners shall be awarded $100 as the reasonable professional fee. In addition to this fee, Petitioners are entitled to that portion of their costs which cover the period from April 1981 through April 6, 1983. The Court shall award $700 as the reasonable amount of these costs.

An appropriate Order accompanies this Memorandum.

### ORDER

In accordance with the Memorandum entered this date in the above-captioned action, it is by the Court this 3rd day of April, 1986,

ORDERED, that the Washington Teachers' Union (WTU) shall pay to Petitioners the sum of Twenty–Four Thousand, Nine Hundred Sixty–Nine Dollars ($24,969.00) in reasonable attorneys' fees and costs; and it is

FURTHER ORDERED, that payment shall be made within 15 days of the date of this Order.