**Elizabeth DOLE, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**LOCAL 512, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL–CIO, Defendant.**

No. 88–551–Civ–J–12.

United States District Court,
M.D. Florida,
Jacksonville Division.

Feb. 2, 1990.

William H. Berger, U.S. Dept. of Labor, Office of Regional Solicitor, Altanta, Ga., for plaintiff.

John F. MacLennan, Conrad J. Cendrowski, Kattman, Eshelman & MacLennan, P.A., Jacksonville, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MELTON, District Judge.

This action was commenced by plaintiff Elizabeth Dole, Secretary of Labor ("the Secretary"), pursuant to § 402(b) of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 482(b) ("the Act"). Plaintiff seeks to set aside and require the rerunning of the October 1987 election for the office of Secretary-Treasurer/Business Manager ("Business Manager") of defendant Local 512, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO ("Local 512" or "the Union"). Plaintiff asserts that seven invalid votes were cast in the election, effectively undermining the margin of victory. Defendant maintains that at least one of the challenged votes was cast by an eligible voter.

This nonjury action was tried by the Court on September 13, 1989, with final arguments waived by the parties. Testimony was received from various persons who were involved in the operation of Local 512 and the running of the October 1987 election. The testimony of two witnesses was received in deposition form. Documentary evidence also was received. The parties have stipulated to many facts of this case, set forth with minor changes in paragraphs 1 through 22. The Court has fully considered the believability of the testimony presented, including the credibility of witnesses, and has also carefully reviewed the documentary evidence. Based thereon, the

Court finds that plaintiff has failed to demonstrate by a preponderance of the evidence that she is entitled to a declaration that the October 1987 election is invalid and any relief attendant to such a finding. In so holding, the Court makes the following Findings of Fact and Conclusions of Law in accordance with Fed.R.Civ.P. 52(a).

## FINDINGS OF FACT

1. Local 512 is, and at all times relevant to this action has been, an unincorporated association maintaining its principal office at 1210 Lane Avenue North, City of Jacksonville, County of Duval, State of Florida, within the jurisdiction of this Court.

2. Local Union 512 is, and at all times relevant to this action has been, a local labor organization engaged in an industry affecting commerce within the meaning of §§ 3(i), 3(j) and 401(b) of the Act, 29 U.S.C. §§ 402(i), 402(j) and 481(b).

3. Local 512 is, and at all times relevant to this action has been, chartered by the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("the International"), an international labor organization engaged in an industry affecting commerce within the meaning of §§ 3(i) and 3(j) of the Act, 29 U.S.C. §§ 402(i) and 402(j).

4. Local 512 conducted an election of union officers on October 9 and 10, 1987, which election was subject to the provisions of Title IV of the Act, 29 U.S.C. §§ 481–483.

5. The results of the election for Business Manager, as officially announced by the Election Committee was as follows:

*Frank Pendleton—505*
*Robert Pike—504*
*Gilbert Boone—140*

6. The Department of Labor's recount of the ballots showed the following results for the office of Business Manager:

*Frank Pendleton—509*
*Robert Pike—502*
*Gilbert Boone—130*

7. Forty-nine challenged ballots were cast during the election, one of which was blank. All of the remaining forty-eight challenged ballots ultimately were counted by the Election Committee.

8. Of the forty-eight challenged ballots counted, the parties agree that four were cast by persons ineligible to vote—Cecil G. Hodges, Jeff S. DeAngleo, Marvin Adderly and Boyd Dunkin.

9. Employees of Motor Convoy, Inc. ("Motor Convoy")—Willie Jackson ("Jackson"), Billy Camp ("Camp"), and Marvin Castleberry ("Castleberry")—cast the three other challenged ballots which were counted.

10. Pursuant to Section 17, paragraph 1 of Local 512's By-Laws, in order to be eligible to vote in the October 1987 election, a member of Local 512 had to have his or her dues paid up through the month prior to the month in which the election is held. The same paragraph further provides that a member of Local 512 on checkoff, as were Jackson, Camp and Castleberry, could not be declared ineligible to vote by reason of a delay or default in the payment of dues by the employer to Local 512.

11. The paragraph further states that "a member who is on checkoff shall be under a duty to pay his dues directly to the Local Union if he has no monies owing to him by his employer which are subject to his checkoff authorization on the date when the employer deducts the dues of other members."

12. Article 36, Section 2 (checkoff) of the Central and Southern Conference Area Supplemental Agreements to the National Automobile Transporters Agreement, to which Local 512 and Motor Convoy are signatories, provides:

The Union shall certify to the Employer in writing each month a list of its members working for the Employer who had furnished to the Employer the required authorization, together with an itemized statement of dues, initiation fees (full and installment), credit union and present deductions or uniform assessments owed and to be deducted for such month from the pay of such member and the Employer shall deduct such amount from the first (1st) paycheck following receipt of

statement of certification of the members and remit to the Union in one lump sum. The Employer shall add to the list submitted by the Union the names of all regular new employees hired since the last list was submitted and delete the names of employees who are no longer employed.

Where an employee who is on checkoff is not on the payroll during the week which the deduction is to be made or who has no earnings or insufficient earnings during that week or is on leave of absence, the employee must make arrangements with the Union to pay such dues in advance.

13. Motor Convoy does not receive notice from Local 512 of union members who have paid their dues directly to the Union.

14. Local 512's checkoff billing to Motor Convoy for September 1987, shows a billing of $62 each for Jackson and Camp (two months).

15. Neither Jackson nor Camp had any earnings in the first pay period of September 1987, and Motor Convoy did not remit any dues checkoff monies for Jackson or Camp in its October 1987 remission for September 1987 dues.

16. Both Jackson and Camp received holiday pay in the gross amount of $119.36 for the second pay period of September 1987. From that gross amount, Motor Convoy withheld $8.53 in FICA tax and $50 in credit union payments from Jackson's gross, leaving him with $60.83 net pay. Motor Convoy deducted $10.22 in federal tax withholding, $8.53 in FICA tax and $100 in credit union payments from Billy Camp's gross, leaving him with $.61 net pay.

17. Castleberry was off work from mid-January 1987 to mid-July 1987, due to an injury. He did not take a withdrawal from Local 512, which billed Motor Convoy for Castleberry's dues in February, March, April and May 1987, at which time he owed $120. Castleberry was dropped from Local 512's billing in June, July, August, September and October 1987, and for many months thereafter.

18. The dues payment register of Local 512 for Jackson shows $31 paid on July 21, 1987, for July 1987 and then $62 paid on December 22, 1987, for August and September 1987. The dues payment register of Local 512 for Camp shows $31 paid on July 21, 1987, for July 1987 and then no further payments. On January 15, 1988, he was suspended from membership. The dues payment register of Local 512 for Castleberry shows him suspended from membership as of May 18, 1987, through at least July 1988.

19. At no time up to October 10, 1987, did Jackson, Camp or Castleberry offer payment of dues owing for the period up to and including September 1987, directly to Local 512.

20. Pike's internal protests to the union were all timely and his complaint to the Secretary was timely.

21. Pike, at the time of the trial of this action, was ineligible to run for office with Local 512 as he was permanently disabled and has taken a withdrawal from Local 512.

22. Castleberry had sufficient wages for the months of July through September 1987 that had Motor Convoy deducted dues pursuant to Castleberry's dues checkoff authorization card, Castleberry would have been eligible to vote in the October 1987 election.

23. The billing statement sent by Local 512 to Motor Convoy contained a request that all additional employees who are not listed on the billing statement be added and that the billing statement be returned to Local 512. T.T. at 113–16. Pendleton credibly testified that this had been the practice with Motor Convoy for at least as long as he had been Business Manager. *Id.*

24. Local 512 sent a letter dated July 10, 1989, to Motor Convoy, for the stated purpose of clarifying "confusion pertaining to dues checkoff." Pl.Exh. No. 11. Pendleton testified that the letter came in response to the controversy surrounding the dues deductions of a union member who has returned to work after an absence but has not been placed on the Union's dues collection list. T.T. at 65–66. The letter

**1566**

proposes procedures to follow in the future to avoid a repeat of the circumstances that gave rise to the challenge to Castleberry's eligibility to vote.

25. Pendleton testified that the Union contends Motor Convoy breached the check-off procedures regarding Castleberry, but Local 512 has not filed a grievance on the matter. T.T. at 31–32, 64–65. Pendleton stated his belief that the issue was best approached on a less formal basis that would provide relief for the future. T.T. at 64–66. He expressed his concern at preserving "a good working relationship with our companies" and a desire to "use the grievance procedure as a last means of resort." *Id.*

26. Jackson and Camp would have been eligible to vote only if Motor Convoy had preferred the deduction of union dues over the credit union deductions actually made and made the deduction of union dues in the second rather than the first pay period of the month.

27. The practice at Motor Convoy for the past five years has been to deduct dues for Local 512 only in the first pay period of the month after the receipt of the Union's billing. Pl.Exh. No. 1, Deposition of Paul Brooks, at 5. When an employee has no earnings or insufficient earnings to cover union dues in the first pay period of the month, Motor Convoy provides notice to the Union that no dues were deducted by remitting a copy of the dues billings with the amount billed crossed out. *Id.* at 9–10.

28. Under the Union's rules, a tie vote for the office of Business Manager compels a rerunning of the election. T.T. at 52.

29. The next regularly scheduled election of officers of Local 512 is set for October 1990. The Union's cost to run an election for officers, regular or special, is approximately eleven thousand dollars. T.T. at 50–51.

## CONCLUSIONS OF LAW

1. Jurisdiction is conferred upon this Court by the provisions of section 402(b) of the Act, 29 U.S.C. § 482(b).

2. The Secretary is entitled to relief only if confidence in the outcome of the election is undermined after evaluation of the eligibility of the contested votes. *Cf. Donovan v. Local 10902, Communication Workers of Am.*, 650 F.2d 799, 802 & n. 7 (5th Cir. Unit B July 1981). Pendleton won by a seven vote margin over Pike. The parties have agreed that four votes were cast by ineligible voters. Of the three remaining challenged ballots, a conclusion by the Court that a ballot was cast by an eligible voter removes any pallor from the complexion of the election.

3. Section 401(e) of the Act, 29 U.S.C. § 481(e), guarantees the right to vote in union elections to any union member who is otherwise eligible but for an employer's breach of the dues checkoff clause of a collective bargaining agreement. *See Colpo v. General Teamsters Local Union 326*, 659 F.2d 399, 401 (3d Cir.1981), *aff'g* 504 F.Supp. 573 (D.Del.1980).

4. The respective responsibilities of the Union, Motor Convoy, and the employees determine the applicability of section 401(e). "Where the check-off system is used and specific authority is given by the employees for its exercise at a particular time with payment of the dues directly to the union the burden of record keeping rests upon the employer and the union." *Wirtz v. Local 191, Int'l Bhd. of Teamsters*, 226 F.Supp. 179, 185 (D.Conn.1964). The employer's failure to deduct union dues when sufficient wages have been earned in the proper pay period cannot render the affected employee ineligible to vote. *See, e.g., Colpo*, 659 F.2d at 401; *Local 191*, 226 F.Supp. at 185.

5. Further, a union may not enforce its eligibility criteria in a manner that an error by the union in providing names to the employer causes the employee to lose the right to vote. *See, e.g., English v. Cunningham*, 282 F.2d 848, 850 (D.C.Cir. 1960) (interpreting Teamsters agreement).

6. Based on the foregoing principles, the Court concludes that Castleberry was eligible to vote in the October 1987 election. Motor Convoy failed to deduct

his dues despite the existence of a valid dues check-off authorization and adequate earnings in the relevant pay period. It is immaterial whether the Supplemental Agreement or any other agreement between Local 512 and Motor Convoy impressed on the latter a duty to inquire into Castleberry's status when his name did not appear on the Union's billing statement. To the extent that Motor Convoy had such a duty, section 401(e) protects Castleberry from its failure to deduct the dues. To the extent that Local 512 bore the responsibility to direct the resumption of dues deductions, its failure to bill and the concomitant failure to receive dues cannot be used as a basis to deny Castleberry his right to vote.

The Secretary has urged the Court to conclude that Castleberry would not have paid his arrearage and reinitiation fee prior to the election, due to the size of the amount owing, and therefore he would not have been eligible to vote anyway. The Court declines to follow this suggestion. The record contains no support for the Secretary's speculation. Moreover, consideration of Castleberry's willingness to pay would include additional speculation on the Union's willingness to waive arrearage and fees. This the Court will not do.

7. The conclusion expressed in ¶ 6 is dispositive of the Secretary's suit. In the interests of complete justice, however, the Court will issue its conclusions concerning the alternative theories underlying the defense of this action.

■ 8. Jackson and Camp were not eligible to vote in the October 1987 election. The failure to withhold union dues from their wages resulted from their lack of earnings in the week when dues deductions customarily were made. The Court rejects defendant's argument that the Master Agreement imposed on Motor Convoy an obligation to deduct dues in successive pay periods of a month if an employee did not work in the pay period when dues were deducted for all other employees. The Supplemental Agreement denotes the time for making deductions and it is confirmed by the practice of the five years preceding. Section 401(e) does not protect an employee who is not employed and therefore has no earnings during the week in which dues are usually deducted. *See Local 191*, 226 F.Supp. at 185. Local 512's by-laws expressly place the burden on the member to pay directly to the Union in such a situation.

■ 9. Both parties developed testimony on the issue of the good faith of the Elections Committee in deciding to count the challenged ballots. Defendant, observing that the Election Committee was dominated by representatives of the challenger candidates, argues that the Act does not compel the rerun of an election where a faction of the union intentionally violates the Act, loses the election, and seeks to rely on its violations as a basis for setting the election aside. Plaintiff suggests in opposition that no predicate for bad faith is present and, more importantly, that the principle relied upon by defendant does not apply to challenger factions.

■ Defendant's argument relies on the principles of equity stated in *Marshall v. Local 1010, United Steelworkers of America*, 664 F.2d 144 (7th Cir.1981). This case holds that the "unclean hands" of an incumbent faction, as manifested by its abuse of the election process, may justify the refusal of a district court to grant the remedy of a rerun election when the incumbent faction lost the original election. *See id.* at 149–52; *accord Donovan v. Local 6, Washington Teachers' Union*, 747 F.2d 711, 716 (D.C.Cir.1984) (relying on congressional intent to end "improper conduct by entrenched union leadership"). Although the Eleventh Circuit has not passed on the issue, the central tenet of *Local 1010* concerning the equitable nature of the present suit is widely shared by the courts of appeals. *See McLaughlin v. Lodge 647, Int'l Bhd. of Boilermakers*, 876 F.2d 648, 653 (8th Cir.1989); *Usery v. International Org. of Masters, Mates & Pilots*, 538 F.2d 946, 950 (2d Cir.1976); *see also Dole v. Local Union 226, Hotel & Restaurant Employees*, 718 F.Supp. 1479, 1485–86 (D.Nev.1989); *Dole v. Local 317*, 711 F.Supp. 577, 582–83 (M.D.Ala.1989).

**1568**

This Court accepts the principle established in *Local 1010.* In doing so, the Court takes cognizance of the rationale of that case, one that focuses on the congressional intent to control the abuses of incumbent factions, not challengers. Indeed, one district court in the Seventh Circuit has limited *Local 1010* in precisely this manner. *See Donovan v. Local 719, U.A.W.,* 561 F.Supp. 54, 58–59 (N.D.Ill.1982). Because of this distinction, defendant's argument is rejected and the Court has made no factual findings on the issue of the Elections Committee's conduct.

10. Were the Court to find for plaintiff, however, it would exercise its discretion to limit the remedy to supervision of the next scheduled election rather than a rerunning of the October 1987 election. In reaching this conclusion, the Court places emphasis on the short time remaining in the current terms of office and on the intervening loss of eligibility for office of the leading challenger in the original election. The purposes of the Act would not be advanced and the practicalities of the situation counsel against the expense of a repeat election.

Based on the foregoing, it is hereby

ORDERED AND ADJUDGED:

That the Clerk of the Court is directed to enter judgment in favor of defendant and dismissing this case.