Raymond J. DONOVAN, Secretary of Labor, Plaintiff,

v.

NATIONAL ALLIANCE OF POSTAL AND FEDERAL EMPLOYEES, Defendant.

Civ. A. Nos. 82–3018, 82–3113.

United States District Court, District of Columbia.

May 31, 1983.

Royce C. Lamberth, Asst. U.S. Atty., Washington, D.C., for plaintiff.

Edward L. Welch, Edwardsville, Ill., George C. Lacy, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

These consolidated cases are before the Court on plaintiff's motions for summary judgment. The complaints allege that defendant, the National Alliance of Postal and Federal Employees (NAPFE or union) violated section 401(g) of the Labor-Management Reporting and Disclosure Act of 1959 (Act), 29 U.S.C. § 481(g), by using its funds to promote the candidacy of the incumbent for the office of National President of the union.[1]

At the time of the election in question, defendant had approximately 19,000 members with voting rights. Ballots for the 1982 regular election for National President were mailed to eligible voters by June 1,

---

1. The complaint in Civil Action No. 82–3113 also alleges a violation of section 401(c) of the Act, 29 U.S.C. § 481(c), which prohibits the discrimination against candidates with respect to the use of membership lists. Defendant "vigorously denies" committing this violation and asserts that its denial constitutes a disput-ed material fact precluding summary judgment. Even if defendant's bald protests, without explication, could create a genuine issue for the trier of fact, summary judgment is appropriate nonetheless, because as a matter of law a new election, conducted in accordance with the Act, is required.

1982 and would be counted if received by June 22, 1982. Robert L. White, the incumbent, was one of four candidates.

NAPFE publishes a monthly journal called the *National Alliance* which is sent each month to all union members in good standing. NAPFE pays all publishing and mailing costs. The February, March, April and June 1982 issues of the *National Alliance* contained columns written by President White entitled "From the President's Desk." Pl's Exhs. A, B, C and D. Excerpts from these columns indicate convincingly that White used this union-financed publication to promote his candidacy:

> Once the candidates have met the filing requirements, it will be up to you, the membership, to decide on the future course that our union will take. As one who has attempted to provide positive and progressive leadership over the past few years, I can only assure you that my devotion and dedication to the cause of our union, has not diminished in the least .... Our union has, without a doubt, made tremendous progress over the past few years. Whether or not such progress is continued into the future, will be your decision.

Pl's Exh. A.

> I am very pleased that it is now National Election Time .... Our union is again at a crossroad in its long and glorious history, and the future of our union will be determined by the outcome of this pending National Election ....
>
> The record will show and prove that, as National President, I have always brought to the National Executive Board and National Convention a fair and accurate report covering the affairs of our great union.

Pl's Exh. B.

> The success or failure of any union's growth and development, to a large extent, depends upon the elected leadership of the union. Therefore, it is significant that you know there is a lot at stake in our 1982 National Election .... As your National President, I have no choice except to carry out the will of the majority of the membership .... Again, I wish to remind you that it is National Election Time. We are committed to making the eighties a "decade for success"? [sic] To accomplish this will take the teamwork of truly dedicated officers.

Pl's Exh. C.

The union financed other campaign literature extolling, directly and indirectly, the leadership qualities and accomplishments of the incumbent President.

On February 4, 1982 White issued a memorandum to all Local Presidents, Vice-Presidents, Local Secretaries, Auxiliary Presidents and National Executive Board Members, reciting various of his achievements and concluding:

> I believe that my record as a leader of this union can stand the test of time, accomplishment, dedication and service. I am proud of where we are today and I look forward to continuing to serve our great union. I will be a candidate for re-election as National President of NAPFE.

Pl's Exh. E. This memorandum was printed and distributed by NAPFE employees with union funds.

On February 22, 1982 White issued another union-financed memorandum to all Local Presidents, Vice-Presidents, Auxiliary Presidents, National Executive Board Members and dedicated Alliance members, criticizing one of his opponents—Wesley Young. Pl's Exh. F. In a memorandum dated March 25, 1982 to Local Presidents, Auxiliary Presidents and Executive Board Members, White explained that he was best suited to lead the union during a critical period of internal disorder. Pl's Exh. G.

On April 26, 1982, NAPFE issued a press release concerning the listing by *Ebony* magazine of White as one of the hundred most influential black Americans. The press release also enumerated the many accomplishments of "White's administration." Pl's Exh. H. NAPFE paid the printing, preparation and distribution costs.

The May 1982 issue of the *National Alliance* contained an advertisement endorsing

White's re-election. The $120 cost for the advertisement was paid by check No. 119, dated April 9, 1982, issued by NAPFE's Local 815. Pl's Exh. J.

When the votes were counted, White was declared the winner with 2,389 votes. Wesley Young placed second with 1,149 votes. Frederick Hogan received 681 votes. Both Young and Hogan protested the election results to the Secretary. These actions followed.

█ One of the purposes of the Labor-Management Reporting and Disclosure Act of 1959 was to insure "free and democratic" union elections. *Wirtz v. Local 153, Glass Bottle Blower's Association,* 389 U.S. 463, 470, 88 S.Ct. 643, 647, 19 L.Ed.2d 705 (1968). Section 401(g) of the Act, 29 U.S.C. § 481(g), furthers this purpose by prohibiting unions from providing financial support, facilities, equipment or materials to any candidate. This statutory proscription is unambiguous. *See Schultz v. Local Union 6799, United Steelworkers of America,* 426 F.2d 969, 972 (9th Cir.1970), *aff'd,* 403 U.S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971). Additionally, the Department of Labor Regulations specifically speak to the illegality of partial union publications:

> Thus, a Union may neither attack a candidate in a union-financed publication nor urge the nomination or election of a candidate in a union-financed letter to the members. Any such expenditure, regardless of the amount, constitutes a violation of section 401(g).

29 C.F.R. § 452.75 (1982).

Strong praise for an incumbent in a union newsletter distributed preceding an election constitutes prohibited campaign literature. *Usery v. International Organization of Masters, Mates and Pilots,* 538 F.2d 946, 949 (2d Cir.1976).

While the Act proscribes the showing of any preference for any candidate for union office through a union-financed publication, a union publication may cover the inherently newsworthy activities of an incumbent running for re-election. Yet, there is a difference between the use of a union publication to report the activities of the President and the use of such publication to promote his candidacy. *Yablonski v. United Mine Workers,* 305 F.Supp. 868, 871 (D.D.C.1969). Coverage of newsworthy activities of the incumbent may be so excessive as to "render it campaign literature on behalf of the incumbent." *Camarata v. International Brotherhood of Teamsters,* 478 F.Supp. 321, 330 (D.D.C.1979).

The Court finds that as a matter of law, the tone, content and timing of the defendant's publications as described above, effectively endorsed and encouraged the re-election of President White in violation of section 401(g) of the Act. Certainly some of these pronouncements were more subtle than others but the import of each one is unmistakably promotional, defendant's denials notwithstanding. *See generally Brennan v. Sindicato Empleados de Equipo Pesado, Construccion Y Ramas Anexas de Puerto Rico, Inc.,* 370 F.Supp. 872, 877–79 (D.P.R.1974); *Hodgson v. United Mine Workers of America,* 344 F.Supp. 17, 23 (D.D.C.1972).

█ Defendant argues that section 401(g) should not be applied to the NAPFE because of its unique history as a predominantly black labor organization, formed to protest against discrimination and engaged in advancing the causes of the victims of discrimination. More particularly, defendant alleges that the union has been fighting a conspiracy to destroy it and thus, in effect, must be permitted to violate the Act to "stay alive." *See* Affidavit of Robert L. White. No matter how noble defendant's purpose, Congress designed the Act "to curb the possibility of abuse by benevolent as well as malevolent entrenched leaderships." *Usery v. Stove, Furnace and Allied Appliance Workers,* 547 F.2d 1043, 1045 (8th Cir.1977) (*quoting Wirtz v. Hotel, Motel & Club Employees Union, Local 6,* 391 U.S. 492, 503, 88 S.Ct. 1743, 1750, 20 L.Ed.2d 763 (1968)). Thus, good intentions will not excuse a violation of section 401(g).

Defendant also contends that it lacks sufficient information to respond to plaintiff's

allegations of illegal conduct.[2] Plaintiff has identified the challenged documents several times for defendant and defendant has admitted that these documents are true and genuine copies. Plaintiff's memorandum in support of its motion for summary judgment must have dispelled any prior doubts as to which statements in those documents the Secretary was contesting.

An election shall be set aside if a violation of the Act "may have affected the outcome of the election." 29 U.S.C. § 482(c)(2). A proven violation of section 401(g) establishes a *prima facie* case that the outcome of the election may have been affected. *Wirtz v. Hotel, Motel & Club Employees Union, Local 6,* 391 U.S. 492, at 506–07, 88 S.Ct. 1743, at 1751–1752, 19 L.Ed.2d 705 (1968). Defendant may rebut the *prima facie* case by "tangible evidence" which supports a finding that the violation did not affect the result. *Id. See Donovan v. Local Union 70,* 661 F.2d 1199 at 1202 (9th Cir.1981); *Usery v. Stove, Furnace and Allied Appliance Workers,* 547 F.2d at 1046; *Brennan v. Local Union No. 639, International Brotherhood of Teamsters,* 494 F.2d 1092, 1098 (D.C.Cir.1974).

Defendant has offered no evidence whatsoever indicating that the outcome of this election was not affected. Rather, it claims that "given the uncertainty of the plaintiff's allegations, it is impossible for the defendant to determine whether the various publications relied upon by the plaintiff may have affected the outcome of the election because it doesn't know what to ask its members." White received 2,389 votes. Young and Hogan received 1,149 and 681 votes, respectively. Approximately 19,000 voters each received at least three articles written by White supporting his own candidacy and some union officials received other promotional memoranda. Despite the wide margin of victory here, the illegal publica-

tions may well have influenced the election result. Since defendant has not demonstrated otherwise, a new election must be conducted.

Accordingly, it is, this 31st day of May, 1983

ORDERED that plaintiff's motions for summary judgment shall be and they hereby are granted; and it is

FURTHER ORDERED that the June 1982 election for the office of National President of the National Alliance of Postal and Federal Employees is hereby declared null and void; and it is

FURTHER ORDERED that defendant conduct a new election for the office of National President under the supervision of the plaintiff as soon as practicable and no later than 60 days from this date; and it is

FURTHER ORDERED that defendant's Motion to Compel Answer to Interrogatory shall be and hereby is denied; and it is

FURTHER ORDERED that judgment shall be entered in favor of plaintiff, Raymond J. Donovan, Secretary of Labor and against defendant, National Alliance of Postal and Federal Employees; and it is

FURTHER ORDERED that this Court shall retain jurisdiction over these actions in accordance with 29 U.S.C. § 482(c), pending the outcome of the new election and certification by the Secretary of the name of the person elected, for the purpose of entering a decree declaring such person to be National President of defendant organization at that time.

---

**2.** Defendant has filed a Motion to Compel Answer to Interrogatory requesting plaintiff to identify precisely the segment of any publication which allegedly promotes the candidacy of a specific individual. Plaintiff has answered this interrogatory in a general fashion, indicating that the overall tone and content of the

articles encouraged the candidacy of the incumbent White. However, the interrogatory in question incorporated by reference the answer to another interrogatory which plaintiff answered more specifically. *See* Government's Opposition to Defendant's Motion to Compel Answer to Interrogatory at 2.