Robert B. REICH, Secretary of Labor, United States Department of Labor, Plaintiff,

and

Gene Giacumbo, Intervenor–Plaintiff,

v.

LOCAL 843, BOTTLE BEER DRIVERS, WAREHOUSEMEN, BOTTLERS AND HELPERS, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFERS, WAREHOUSEMEN, AND HELPERS OF AMERICA, AFL–CIO, Defendant.

Civ. A. No. 93–2199 (WGB).

United States District Court, D. New Jersey.

Nov. 17, 1994.

Susan C. Cassell, U.S. Atty., Newark, NJ, William S.J. Fraenkel, Office of Sol., U.S. Dept. of Labor, New York City, for plaintiff, Robert B. Reich, Secretary of Labor.

Louie Dimitrios Nikolaidis, Lewis, Greenwald, Kennedy, Lewis, Clifton & Schwartz, East Rutherford, NJ, for plaintiff-intervenor, Gene Giacumbo.

Sanford Roy Oxfeld, Balk, Oxfeld, Mandell & Cohen, Newark, NJ, for defendant.

BASSLER, District Judge:

The United States Secretary of Labor ("the Secretary") has filed this action against Local 843, Bottle Beer Drivers, Warehousemen, Bottlers and Helpers ("Local 843"), for its alleged violation of 29 U.S.C. § 481(g). The Secretary seeks an order declaring the election for the office of President, held by Defendant on December 2, 1992, null and void, as well as an order directing Defendant to hold a new election for that office under the Secretary's supervision. This Court has jurisdiction over this matter pursuant to 29 U.S.C. § 482(b).

Before the Court are cross-motions for summary judgment. Plaintiff–Intervenor Giacumbo joins in the Secretary's motion.

This controversy centers around two publications distributed to members of Local 843 in the final weeks before the December, 1992 election. Supporters of the "New Teamsters" slate of candidates for Local 843 office, which included Plaintiff–Intervenor Giacumbo as the Presidential candidate, issued a campaign newsletter ("newsletter") criticiz-ing Mr. Frederick Potter, President of another union, Local 439. Mr. Potter issued a letter ("Potter letter") in response to the "New Teamsters'" newsletter at Local 439's expense. Plaintiffs allege that the Potter letter promoted Mr. Giacumbo's opponent in violation of 29 U.S.C. § 401(g). Defendant not only denies that a violation occurred, but also contends that Local 843 cannot be ordered to hold a new election on the basis of an alleged violation committed by Local 439 and alternatively, that Plaintiff–Intervenor should not be granted this remedy for a violation provoked by the "New Teamsters'" newsletter.

For the reasons set forth in this opinion, the Court **DENIES** the Defendant's motion for summary judgment. The Court **GRANTS** the Secretary and Plaintiff–Intervenor's motion for summary judgment and declares the election for the office of President, conducted by the Defendant on December 2, 1992, void. The Court **GRANTS** the Secretary's request to order the defendant to conduct a new election for the office of Local 843 President within 120 days from the date of this Opinion. Plaintiffs' request for an award of the costs of prosecuting this action is **DENIED,** without prejudice.

## I. BACKGROUND

This action arises out of an election held by the Defendant, Local 843, on December 2, 1992. Local 843 is part of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, AFL–CIO ("the Teamsters"). Virtually all of the members of Local 843 are employees at the Anheuser–Busch brewery in Newark, NJ.

The election, held on December 2, 1992, involved a contest between two competing factions within Local 843. Each faction had its own slate of candidates for office. One slate, the "New Teamsters", was headed by Plaintiff–Intervenor, Gene Giacumbo, the incumbent President of Local 843. The other slate was headed by Bruce Williams, the only other candidate for President. According to Mr. Giacumbo, "[t]he election campaign was very bitter and acrimonious". Plaintiff–In-

tervenor's Statement of Uncontested Facts at ¶ 4.

In mid-November 1992, supporters of Mr. Giacumbo and the "New Teamsters" circulated a newsletter entitled "Local 843 Election News" among members of Local 843. *See id.* at Appendix A. The newsletter ridiculed Mr. Williams and the members of his slate as well as certain regional leaders of the Teamsters. A cartoon depicted Mr. Williams as a puppet whose strings were being pulled by a pig, labelled "Fat Freddy Potter LU 469" and a man smoking a large cigar, labelled "Frank Cariccino JC 73". *Id.* Frederick Potter has been the President of another chapter of the Teamsters, Local 469, since 1987. In addition, Mr. Potter was and continues to be the Chairman of the Teamster's Joint Council 73 Political Action Committee, of which Frank Carricino is also a member.

In addition to the cartoon, the newsletter contained several allegations about Mr. Potter. The newsletter repeatedly accused Mr. Potter of having connections to organized crime, calling Potter a "prat boy" to Mr. Carricino, the alleged "heir to the Porvansano throne", and claiming that Mr. Potter had hired a "mob attorney" to represent Local 469. *Id.* The newsletter also alleged that the wife of one of the members of the Williams slate worked for Mr. Potter and Local 469. *Id.* Defendant contends that all of these allegations concerning Mr. Potter are false. *Id.* at ¶ 3.

When Mr. Potter found out about the newsletter, he responded with a letter to Mr. Giacumbo, dated November 17, 1992. The letter was typed by Ms. Carroll Caruso, then employed as the office secretary, on Local 469 letterhead. At Mr. Potter's instruction, Ms. Caruso made between one and two hundred copies of the letter. Local 469 paid Ms. Caruso's salary. Moreover, Local 469 owned and purchased the stationery on which the letter was written, as well as copier and paper on which it was duplicated.

In the letter addressed to Mr. Giacumbo, Mr. Potter denied any connection with the "mob" and claimed that no relatives of members of the Williams slate were working for him. Potter Let. at 1. Mr. Potter told Mr. Giacumbo that the newsletter, "[l]ike other publications you've been involved in ... lacks truth and substance." According to Mr. Potter, he "recognize[d] the importance of local autonomy and ha[d] not and w[ould] not interfere with any Local Union elections". Mr. Potter expressly stated, however, that he had accepted the offer of certain unnamed "individuals" to distribute this letter responding to the allegations contained in the newsletter because he "[could not] rely upon your [Mr. Giacumbo's] sense of fair play to print a retraction." Finally, Mr. Potter closed his letter to Mr. Giacumbo with the following remarks:

> Your hopes for re-election must be very poor for you to resort to this type of bullshit (pardon the language). I would imagine writing about other people will detract from the real issues in your campaign. If these are the tactics of the New Teamsters, I do not want to be part of the "so-called New Teamsters".

Potter Let. at 1.

Consistent with Mr. Potter's claims, certain unknown persons came to the Local 469's office and picked up the one to two hundred extra copies of the letter addressed to Mr. Giacumbo. These letters were then distributed to the members of Local 843 at the Newark brewery.

On December 2, 1992, Local 843 conducted an election by mail-in-ballot, which was subject to the requirements of Title IV of the Labor–Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. §§ 481 *et seq.* Mr. Williams, the challenger, ousted Mr. Giacumbo, the incumbent President, by a vote of 176 to 125. By letter dated December 4, 1992, Mr. Giacumbo protested the election to Teamster's Joint Council 73, which later denied his protest. Mr. Giacumbo appealed the Joint Council's denial to the Union International. Mr. Giacumbo then filed a timely complaint with the Secretary of Labor pursuant to 29 U.S.C. § 482(a)(2).

After conducting an investigation, the Secretary found probable cause to believe that a violation of the LMRDA, specifically 29 U.S.C. §§ 481–483 occurred when Mr. Potter issued his letter criticizing Mr. Giacumbo at

Local 439's expense. As a result, the Plaintiff requests this Court to declare Local 843's election for the office of President void and to order the defendant to conduct a new election under the Secretary's supervision.

Since the Secretary commenced this action, Mr. Giacumbo has been fired by Anheuser–Busch. Mr. Giacumbo's termination was upheld by an arbitrator's decision dated July 5, 1994. The parties contest the impact of Mr. Giacumbo's termination on his membership status in defendant, Local 843. Defendant contends that he is no longer a member, while plaintiffs assert that Mr. Giacumbo is an officer of the International, and as such remains a member in good standing of Local 843.

## II. DISCUSSION

### A. The Summary Judgment Standard

The same legal standard applies to each of the parties' cross-motions for summary judgment. Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Whether a fact is material is determined by the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue involving a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Healy v. New York Life Ins. Co.,* 860 F.2d 1209, 1219 n. 3 (3d Cir. 1988), *cert. denied,* 490 U.S. 1098, 109 S.Ct. 2449, 104 L.Ed.2d 1004 (1989).

The moving party has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Where the moving party satisfies this requirement, the burden shifts to the nonmoving party to present evidence that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. Once the moving party has carried its burden of establishing the absence of genuine issues of material fact,

the nonmoving party "may not rest upon mere allegations or denials" of its pleading, Federal Rule of Civil Procedure 56(e), but must produce sufficient evidence to reasonably support a jury verdict in its favor, *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11, and not just "some metaphysical doubt as to material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In determining whether any genuine issues of material fact exist, the Court must resolve "all inferences, doubts, and issues of credibility ... against the moving party." *Meyer v. Riegel Products Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. dism'd.,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984) (*citing Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 874 (3d Cir.1972)).

Since a motion for summary judgment is designed to go beyond the pleadings, factual specificity is required of a party who opposes such a motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Accordingly, in order to defeat a properly supported motion for summary judgment, a party may not merely restate the allegations of his complaint. *Farmer v. Carlson,* 685 F.Supp. 1335, 1339 (M.D.Pa.1988). Moreover, a party cannot rely upon self-serving conclusions, unsupported by specific facts in the record. *Celotex Corp. v. Catrett,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53. A non-moving party must point to concrete evidence in the record which supports each essential element of his case. *Id.* If the party fails to provide such evidence, then he is not entitled to a trial and the moving-party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(e).

### B. No Dispute Exists Regarding the Material Fact that Local 489 Bore the Expense of Issuing and Copying the Potter Letter Distributed to Members of Local 843.

Plaintiff alleges that distribution of Mr. Potter's letter violated LMRDA § 401(g), which provides that:

> No moneys received by any labor organization by way of dues, assessment or similar levy ... shall be contributed or applied to

promote the candidacy of any person in an election subject to the provisions of this subchapter.

29 U.S.C. § 481(g). Under this provision, the origin of the money allegedly used to promote a particular candidate is a highly material fact. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

The parties do not dispute that resources from Local 843 were expended by Mr. Potter in drafting his letter and making copies for distribution. Defendant concedes that Local 469 paid the salary of Ms. Caruso, who typed the letter. In addition, Defendant acknowledges that the stationery upon which the letter was typed was bought and paid for by Local 469. Finally, Defendant admits that both the photocopier and the paper on which the one to two hundred additional copies of the Potter letter were made belonged to and were paid for by Local 469.

Therefore, there is no issue as to whether union funds were expended in creating and copying the Potter letter. The principal points of contention between the parties are whether: the Potter letter promoted a candidacy within the meaning of § 401; the First Amendment to the United States Constitution precludes a finding that the Potter letter violated § 401(g); Defendant, Local 843, can be ordered to hold a new election based upon alleged violations of § 401 committed by Mr. Potter, an officer of Local 439; and the New Teamsters' dissemination of alleged misinformation about Mr. Potter in their newsletter constitutes "unclean hands", which preclude this Court from ordering a new election. Since all of these issues are essentially legal questions, they are appropriate for resolution on summary judgment. *See* Fed.R.Civ.P. 56(e).

*C. Potter Letter Promoted a Candidate in Violation of LMRDA § 401(g).*

As the basis for the parties' summary judgment motions, they offer opposing interpretations of what constitutes promotion of a candidacy in violation of LMRDA § 401(g). Plaintiffs rely upon administrative regulations, which interpret § 401(g) as creating two limitations on the use of labor union funds:

(a) No such funds may be contributed or applied to promote the candidacy of any person in an election subject to title IV, either in an election within the organization expending the funds or in any other labor organization; and

(b) no such funds may be used for issuing statements involving candidates in the election ...

29 C.F.R. § 452.73 (1994). Defendant responds by arguing that the Potter letter falls within the "safe harbor" provision of LMRDA § 401(g), which permits expenditure of union funds for "factual statements of issues not involving candidates". 29 U.S.C. § 401(g). Alternatively, Defendant contends that the Potter did not promote a candidate within the meaning of LMRDA § 401(g). *Id.*

*1. The Potter Letter Does Not Fall Within the Scope of the "Safe Harbor" Provision of § 401(g).*

While LMRDA § 401(g) broadly prohibits the use of union funds to promote candidates, it also contains a "safe harbor" which expressly states that "[s]uch moneys of a labor organization may be utilized for notices, factual statements of issues not involving candidates ..." 29 U.S.C. § 481(g). If the Potter letter falls within the scope of this safe harbor provision, then it does not violate the LMRDA. Thus, such a finding would remove any cause for ordering the new election requested by the Plaintiffs.

According to the Defendant, Mr. Potter, in his letter produced at Local 439's expense, "was solely attempting to address issues which the Giacumbo newsletter raised as to the integrity of both himself and his union in terms of an alleged mob affiliation and whom it employed as its secretary and as its lawyer." Def.Br. at 6. Defendant argues that the letter, on its face, states that its purpose is to "set the record straight". Potter Let. at 1. While Defendant concedes that Potter letter was "clearly strongly worded", it contends that the letter was an exempt "factual statement[ ] of issues not involving candidates." *See* LMRDA § 401(g).

Even if the newsletter contained misinformation about Mr. Potter, his letter in response cannot reasonably be interpreted as

not involving the candidates of the "New Teamsters" slate, particularly Mr. Giacumbo. Mr. Potter expressly referred to not only the election but also Mr. Giacumbo's likelihood of success as a presidential candidate. The Potter letter, distributed to members of Local 843, asserted that:

> Your [Mr. Giacumbo's] hopes for re-election must be very poor for you to resort to this type of bullshit (pardon the language). I would imagine writing about other people will detract from the real issues in your campaign. If these are the tactics of the New Teamsters, I do not want to be part of the "so-called New Teamsters".

Potter Let. at 1. With these statements, Mr. Potter did not provide purely factual information to refute the allegations contained in the "New Teamsters" newsletter, but rather expressed his personal opinions about Mr. Giacumbo, the members of the "New Teamsters" slate, and the likelihood of Mr. Giacumbo winning the upcoming election.

Furthermore, Mr. Potter acknowledges that he wrote the letter in response to a campaign newsletter that expressly endorsed Mr. Giacumbo and the other candidates on the "New Teamsters" slate. Under these circumstances, Mr. Potter's letter crossed the line between a permissible statement of facts, contradicting alleged misinformation contained in the "New Teamsters'" newsletter, and an impermissible venting of personal opinions about candidates for union office. *Cf. Brock v. Connecticut Union of Telephone Workers, Inc.*, 703 F.Supp. 202, 207 (D.Conn. 1988) [*hereinafter Telephone Workers*] ("There is surely a line to be drawn between the (permissible) reporting of [a candidate's] ... activities as ... [union] president and an (impermissible) attack on him in the midst of an election as one who 'misrepresents' facts ...").

*2. Specific Endorsement of a Candidate is Not Required for a Violation of § 401(g).*

■ Additionally, Defendant contends that the Potter letter did not violate LMRDA § 401(g) for two reasons: (1) on its face, the Potter letter does not endorse any specific candidate; and (2) Mr. Potter's motive in writing the letter and permitting it to be distributed was to respond to the allegedly slanderous misinformation promulgated by the "New Teamster's" newsletter. Both of these arguments are without merit.

"To establish a violation of Section 401(g), it is not necessary that the questioned publication be explicitly or implicitly committed to endorsing specific candidates or attacking the opposition. Rather its overall tone, timing, and content must be evaluated to determine whether there is any blatant encouragement of the incumbent [or challengers]." *Donovan v. Local 719, United Automobile, Aerospace and Agricultural Implement Workers of America*, 561 F.Supp. 54, 58 (N.D.Ill.1982) [*hereinafter Local 719*]; *accord Telephone Workers*, 703 F.Supp. at 206, *Usery v. International Org. Masters, Mates and Pilots*, 538 F.2d 946, 949 (2d Cir.1976) [*hereinafter Masters, Mates & Pilots*], *Hodgson v. Liquor Salesmen's Union, Local No. 2*, 334 F.Supp. 1366, 1377, (1971) *aff'd* 444 F.2d 1344 (2d Cir.1971) [*hereinafter Liquor Salesmen's Union*], *Wirtz v. Independent Workers Union of Florida*, 272 F.Supp. 31, 33 (M.D.Fla.1967). Regarding content, federal regulations interpret LMRDA § 401(g) as "prohibit[ing] any showing of preference" by union-financed publications through praise, endorsement, criticism or attack directed towards a candidate. 29 C.F.R. § 452.75 (1994); *accord McLaughlin v. American Fed'n. of Musicians*, 700 F.Supp. 726, 734 (S.D.N.Y.1988) ("promotion of a candidate under § 401(g) includes both affirmative statements about the candidate and negative references about the opposition.").

In addition to the timing, tone, and content, courts often consider "the circumstances surrounding the challenged publications". *Am Fed'n. Musicians*, 700 F.Supp. at 734 (citing *Liquor Salesmen's Union*, 334 F.Supp. at 1377). In *American Federation of Musicians*, the court looked beyond the text of the challenged articles to consider the legitimate need for reporting on and discussion of an incumbent union president's activities in a union-financed newspaper, even though such reporting could impact an upcoming election. *American Fed'n. Musicians*, 700 F.Supp. at 734. The court held that "the continued direct and indirect per-

sonal attacks [on the incumbent] ... constituted more than just reporting on issues that concerned the union." *Id.* at 735.

With respect to the Potter letter, the three factors, timing, tone, and content, all support a finding that a violation of LMRDA § 401(g) occurred.

First, the Potter letter was written and distributed to Local 843 members on November 17, 1992, approximately two weeks before Local 843 held its election.

Second, the overall tone of the letter was extremely derogatory towards Mr. Giacumbo. The Potter letter characterized Mr. Giacumbo's hopes for re-election as "very poor" and the contents of the "New Teamsters" newsletter that endorsed him as "bullshit". Potter Let. at 1.

Third, as a matter of content, the Potter letter expressly criticized the "New Teamsters" slate, of which Mr. Giacumbo was a member. Mr. Potter denounced the "New Teamsters" slate, saying that "[i]f these are the tactics of the New Teamsters, I do not want to be part of the "so-called New Teamsters". *Id.* In addition, the Potter letter accused Mr. Giacumbo and the "New Teamsters" of allegedly spreading misinformation about Mr. Potter in order to "detract from the real issues in your campaign." *Id.* According to Mr. Potter, the "New Teamsters" newsletter, to which he was responding, "[l]ike other publications [Mr. Giacumbo has] been involved in ... lacks truth and substance." Moreover, Mr. Potter claimed that he had to respond to the newsletter because he could not count on Mr. Giacumbo's "sense of fair play to print a retraction." *Id.* These repeated attacks on Mr. Giacumbo's fairness, honesty and credibility suggested that he was an unfit candidate for office. *Cf. Telephone Workers,* 703 F.Supp. at 207.

Therefore, on its face, the Potter letter promoted a candidate in violation of LMRDA § 401(g) because by criticizing Mr. Giacumbo, the letter, distributed to the members of Local 843, effectively endorsed Mr. Williams, Mr. Giacumbo's opponent.

As for surrounding circumstances, Defendant claims that Mr. Potter drafted the letter in response to the "New Teamsters'" newsletter, which contained serious allegations connecting Mr. Potter to organized crime. Even if Mr. Potter's motive of responding to the "New Teamsters'" allegations were reasonable, it cannot justify the scope of the attack and criticism against Mr. Giacumbo. As noted in the discussion of whether the Potter letter falls within § 401(g)'s safe harbor, *supra,* the letter went far beyond factually refuting the allegations of the "New Teamsters". Instead, Mr. Potter's letter consisted primarily of "direct and indirect personal attacks" against Mr. Giacumbo, which violated LMRDA § 401(g). *See American Fed'n. Musicians,* 700 F.Supp. at 735.

Regardless of the letter's content, Defendant argues that Mr. Potter's motive of "setting the record straight", by refuting the allegedly slanderous misinformation contained in the "New Teamsters" newsletter, shows that the letter did not promote a candidate in violation of the LMRDA. Defendant's position is untenable, however, because cases interpreting LMRDA § 401(g) have universally held that motive is irrelevant in determining whether a violation has occurred. *E.g., Telephone Workers,* 703 F.Supp. at 207–08 (motive of "setting the record straight" did not excuse or prevent finding of violation), *Local 719,* 561 F.Supp. at 57 (holding that uncompensated use of employer's trailer as billboard for campaign posters without employer's knowledge violated LMRDA), *Usery v. Stove, Furnace and Allied Appliance Workers Intern. of N. Am., AFL–CIO,* 547 F.2d 1043, 1045 (8th Cir.1977) (holding that "best of motives" do not excuse § 401(g) violation), *Donovan v. National Alliance of Postal and Federal Employees,* 566 F.Supp. 529, 532 (D.D.C.1983), *appeal dismissed,* 740 F.2d 58 (1984). Therefore, Mr. Potter's motive of responding to allegedly slanderous misinformation contained in the "New Teamsters" newsletter endorsing Mr. Giacumbo does not preclude this Court from holding that a violation of LMRDA § 401(g) has occurred.

*D. First Amendment Does Not Preclude Finding LMRDA Was Violated by Distribution of Potter Letter.*

■ Even if a violation of LMRDA § 401(g) occurred, Defendant argues that the

law is unconstitutional as applied to the writing and distribution of the Potter letter because it violates the First Amendment. According to Defendant, "a candidate for union office should not be insulated from criticism ... merely because the candidate happens to be running for union office." Def.Br. at 7.

Although the Third Circuit has never addressed the constitutionality of LMRDA § 401(g), those circuits which have addressed the issue have universally upheld the statute. *E.g., American Fed'n. Musicians,* 700 F.Supp. at 733–34, *Liquor Salesmen's Union,* 334 F.Supp. at 1379–81, *Marshall v. Local Union 20,* International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of Commerce, 611 F.2d 645, 652–53 (6th Cir.1979) [*hereinafter Local Union 20* ]. As one court reasoned, in enacting LMRDA § 401(g):

> Congress ... did not dispute the right of union members, including union officials, to exercise First Amendment rights ... The incidental restriction on speech here is no greater than is essential to the furtherance of the government interests ... The only thing which is proscribed is the use of union or employer funds to promote the candidacy of any person in an election subject to the provisions of Title IV of the LMRDA.

*Liquor Salesmen's Union,* 334 F.Supp. at 1380. "Section 401(g) does not restrict the right of union members and officials to use their private resources to campaign themselves or to support another candidate in any way they see fit." *American Fed'n. Musicians,* 700 F.Supp. at 734.

Contrary to Defendant's position, application of LMRDA § 401(g) to Mr. Potter's letter and its distribution does not violate the First Amendment. Section 401(g) did not preclude Mr. Potter from freely expressing his opposition to the "New Teamsters" and the alleged slander contained in the newsletter. Rather, LMRDA § 401(g) merely required that Mr. Potter not expend any union resources to subsidize his expression, which promoted a candidate in violation of the Act. This incidental restriction on free expression by Mr. Potter is no greater than necessary to promote the government's legitimate interest

fair union elections. *See Liquor Salesmen's Union,* 334 F.Supp. at 1380. Therefore, LMRDA § 401(g) is not unconstitutional as applied to the Potter letter and its distribution.

*E. This Court Can Find a § 401(g) Violation and Order a Supervised Election Even Though the Potter Letter was Issued and Copied at the Expense of Another Union, Local 439.*

■ Defendant, Local 843, argues that it cannot be held responsible for the letter, issued by Mr. Potter, the President of another union, Local 439, and distributed by certain unknown persons. Defendant claims and Plaintiffs do not contest that Local 843 neither brought the newsletter to Mr. Potter's attention nor solicited his letter in response. Def.Stmt. Uncontested Facts at ¶¶ 12, 14. According to the Defendant, the complete absence of Local 843 involvement in either issuing or distributing the letter precludes this Court from finding that LMRDA § 401(g) was violated and ordering a supervised election.

Defendant's attempt to restrict the scope of § 401(g) to prohibit use of union funds only by the union holding the election is not supported by the plain language of the statute. By its terms, LMRDA § 401(g) provides that:

> No moneys received by any labor organization by way of dues, assessment or similar levy, and no moneys of an employer shall be contributed or applied to promote the candidacy of any person in an election subject to the provisions of this subchapter.

29 U.S.C. § 481(g). On its face, the statutory prohibition applies to "any" labor organization and is not restricted to the union holding the election. Similarly, where courts have interpreted § 401(g)'s ban against employers' use of funds to promote candidates, courts have held that the ban applies to all employers, not only to the employer of the workplace where the election is being held. *Local Union 20,* 611 F.2d at 652–53, *Donovan v. Blasters, Drillrunners and Miners Union, Local No. 29,* 521 F.Supp. 595, 587–98 (S.D.N.Y.1981). Therefore, the plain lan-

guage of § 401(g) supports a finding that a violation occurred.

Furthermore, *Telephone Workers,* the only published case addressing this issue of whether a supervised election can be ordered even if the union holding the challenged election did not expend union funds in violation of § 401(g), has adopted this "plain language" reading of the statute. 703 F.Supp. at 209–10. In *Telephone Workers,* two unions distributed publications to members of the Connecticut Union of Telephone Workers (CUTW) which was about to hold an election. The court found that those publications were produced at union expense and promoted a candidate in violation of § 401(g). *Id.* at 206–08. The two unions that distributed the publications were not affiliated with CUTW in any way. *Id.* at 204. In addition, neither the victorious candidate nor any CUTW executive, had "solicited, encouraged, or aided in the distribution of [the] literature." *Id.* at 204. The court rejected CUTW's contention that it should not be ordered to hold a new election because it had done nothing wrong. *Id.* at 208. According to the *Telephone Workers* court, "the relevant provisions of Title IV of the Act, of which § 401(g) is a part, are designed to protect the integrity of union elections, not necessarily to punish wrongdoers." *Id.* at 210. As a result, the court held that a union whose election has been challenged can be ordered to hold a supervised election on the basis of § 401(g) violations committed by another union which influenced the results of the election. *Id.*

Moreover, the plain language interpretation of § 401(g) as applicable to all unions, not only the union that held a challenged election, finds support by analogy to cases finding violations of § 401(g) even where the impermissible subsidies were provided unknowingly or with good intentions. *E.g., Telephone Workers,* 703 F.Supp. at 207–08, *Local 719,* 561 F.Supp. at 57, *Stove, Furnace and Allied Appliance Workers Intern. of N. Am., AFL–CIO,* 547 F.2d 1043, 1045, *National Alliance of Postal and Federal Employees,* 566 F.Supp. at 532. Defendant's argument, that Local 843's lack of involvement in issuing and distributing the Potter letter prevents this Court from finding that a violation occurred, relies upon concepts of intent and blameworthiness, which find no support in the statute or case law. Section 401(g) simply does not require intent or willfulness as an element of a violation.

Based upon § 401(g) itself, as well as cases interpreting it, particularly *Telephone Workers,* this Court concludes that Local 843's lack of involvement in the creation and distribution of the Potter letter does not preclude a finding that § 401(g) was violated. Moreover, Local 843 can be ordered to hold a supervised election on the basis of this violation.

*F. Defendant has Failed to Show that the § 401(g) Violation which Occurred Did Not Influence the Election Results.*

■ Having dispensed with all of Defendant's objections and based upon the undisputed facts that the Potter letter was created and copied at Local 439 expense, the Court finds that distribution of the Potter letter violated § 401(g). As a result, the Plaintiffs have established a prima facie case that the violation "may have affected the outcome of the election." *Wirtz v. Hotel, Motel & Club Employees Union, Local No. 6,* 391 U.S. 492, 506–07, 88 S.Ct. 1743, 1751–52, 20 L.Ed.2d 763 (1968) (quoting LMRDA § 402(c)) [*hereinafter Local No. 6* ]. As a result, "the burden shifts to the Defendant to produce 'tangible evidence' that the violation did not influence the results." *Telephone Workers,* 703 F.Supp. at 210 (citing *Local 6,* 391 U.S. at 506–07, 88 S.Ct. at 1751–52). "In the absence of any rebuttal evidence, the Court must conclude that the outcome of the election has been affected." *Telephone Workers,* 703 F.Supp. at 210.

Defendant's arguments that the Potter letter did not affect the election essentially reiterate its position that the letter did not violate the Act. Since Defendant has not produced any tangible evidence to support its position, the Court concludes that the outcome of the election held by Local 843 on December 2, 1992 was affected by the distribution of the Potter letter in violation § 401(g).

*G. A Supervised Election is the Appropriate Remedy for this § 401(g) Violation.*

Where a court finds that a violation of § 401 "may have affected the outcome of an

election, the court shall declare the election ... to be void and direct the conduct of a new election under supervision of the Secretary and, so far as is lawful and practicable, in conformity with the constitution and by-laws of the labor organization." 29 U.S.C. § 482(c)(2). While the LMRDA requires courts to order a new, supervised election where a violation has occurred, it does not establish any deadlines within which the new election must be held. *See id.*

Local 843 argues that even if a violation of LMRDA § 401(g) has occurred, ordering a new election pursuant to § 402(c) [29 U.S.C. § 482(c) ], is not the appropriate remedy to be imposed by this Court. The Defendant offers three arguments in support of this position: (1) Having distributed the newsletter containing misinformation about Mr. Potter, which prompted his response in violation of the Act, the "New Teamsters", including Mr. Giacumbo, have "unclean hands" and should be denied equitable relief; (2) Mr. Potter can remedy the violation by reimbursing Local 439 for the expense of creating and copying the letter; and (3) Mr. Giacumbo's subsequent termination by Anheuser Busch has rendered the violation moot. All of these arguments are without merit.

*1. The "New Teamsters" Do Not Have "Unclean Hands" which Preclude An Award of a Supervised Election.*

■ According to the Defendant, this Court should not award a new election because the "New Teamsters", by distributing a newsletter containing misinformation about Mr. Potter, prompted the violation of § 401(g). Given the seriousness of the allegations contained in the "New Teamsters'" newsletter, for example, that Mr. Potter had connections with the mafia, Defendant argues that Mr. Potter's response of writing the letter and permitting it to be distributed to clear his name was entirely reasonable and foreseeable. Alternatively, Defendant argues that the factual dispute concerning Mr. Giacumbo's precise role in producing the "New Teamsters'" newsletter is relevant to this issue and thus precludes in favor of the Plaintiffs.

■ The award of a new election pursuant to LMRDA § 402(c) is an equitable rem-

edy. *McLaughlin v. Lodge 647, Int'l. Brotherhood of Boilermakers,* 876 F.2d 648, 652 (8th Cir.1989), *Masters, Mates & Pilots,* 538 F.2d at 950, *Dole v. Local 512, Intern. Brotherhood of Teamsters,* 730 F.Supp. 1562, 1567 (M.D.Fla.1990) [*hereinafter Local 512* ]. Like other equitable remedies, a new election is unavailable to parties with "unclean hands". "When faced with intentional misconduct by defeated incumbents, the District Court may, consistent with the letter and spirit of the LMRDA, exercise its discretion and not require a Section 482(c) reelection." *Donovan v. Local 6, Washington Teacher's Union,* 747 F.2d 711, 716 (D.C.Cir.1984) [*hereinafter Local 6* ]. As the Seventh Circuit reasoned in *Marshall v. Local 1010, United Steelworkers of America, AFL–CIO, CLC,* granting a new election under such circumstances "would. have the perverse result of encouraging and rewarding deliberate violations of the LMRDA". 664 F.2d 144, 152 (7th Cir.1981).

In the only case addressing the issue of whether disseminating false information precludes a party from obtaining the equitable remedy of a new election, the court held that the unclean hands doctrine did not apply. *Donovan v. Local 719, United Automobile, Aerospace and Agricultural Workers of America,* 561 F.Supp. 54, 58 (N.D.Ill.1982) [*hereinafter Local 719* ]. Like Local 843, the defendant in *Local 719* claimed that the defeated candidate deliberately disseminated misinformation, which prompted Local 719 to respond with a newsletter correcting the misinformation. *Id.* at 58–59. The newsletter promoted a candidate in violation of § 401(g). *Id.* The court held that the unclean hands doctrine applied only to misconduct by incumbents, not challengers and thus left open the question of whether deliberate dissemination of misinformation constitutes unclean hands. *Id.* at 59.

In spite of the broad references to "misconduct", courts have only found "unclean hands" precluding an award of a new election where incumbents have themselves allegedly violated the LMRDA. For example, in *Local 6,* a successful challenger alleged that the union incumbents had prevented his supporters from distributing campaign literature in

violation of LMRDA § 401(c). 747 F.2d at 716. Similarly, in *Local 1010*, the incumbents organized an election without secret ballots, in violation of LMRDA § 401(a), and destroyed the actual ballots cast rather than retaining them for one year as required by § 401(e). In *Local 512*, the incumbents improperly denied an eligible member his right to vote in violation of § 401(e). 730 F.Supp. at 1566–67.

In contrast to cases where the unclean hands doctrine has been applied, the "misconduct" of slander allegedly committed by the "New Teamsters" simply does not violate the LMRDA. Therefore, Mr. Giacumbo's participation in composing and/or distributing the allegedly slanderous newsletter is irrelevant and does not preclude an award of summary judgment. This Court declines to extend the unclean hands limitation on the relief of a new election to this case where no violation by the defeated candidate has been alleged.

*2. Mr. Potter Cannot Obviate the Need for a New Election by Reimbursing Local 439 for the Expense of Creating and Distributing His Letter.*

■ Defendant's suggestion that the Secretary of Labor should have asked Mr. Potter to repay Local 439 for the value of the services and supplies used in creating and copying the Potter letter, allegedly $25.00, finds no support in the LMRDA. Reimbursement is not among the remedies for a violation set forth in § 402(c). Most importantly, ordering Mr. Potter to repay Local 439 would not redress the type of harm that the Title IV of the LMRDA was designed to prevent; it does not provide a viable alternative to a new election. "The relevant provisions of Title IV of the Act, of which § 401(g) is a part, are designed to protect the integrity of union elections," *Telephone Workers*, 703 F.Supp. at 210, not the misallocation of union funds. Therefore, ordering Mr. Potter to repay Local 439 for the illegally expended resources is not a viable alternative to ordering a new election.

*3. A New Election is the Appropriate Remedy Regardless of Mr. Giacumbo's Status as a Member of Local 843.*

■ By letter dated July 29, 1994, Defendant notified this Court that Mr. Giacumbo had been terminated by Anheuser–Busch and that his termination had been upheld by an arbitrator's decision dated July 5, 1994. The Defendant did not expressly state the significance Mr. Giacumbo's termination on this action. The Court infers that Defendant believed that Mr. Giacumbo's termination was relevant for the purpose of deciding whether a new election is an appropriate remedy now that Mr. Giacumbo, the defeated candidate, is "assumedly, no longer a member of the defendant, Local 843." If Mr. Giacumbo no longer belongs to Local 843, he presumably is no longer eligible to run for office. According to the Secretary of Labor, "Mr. Giacumbo is an officer of the International and as such is a member in good standing of the defendant Local [843], *vel non* employment with Anheuser–Busch." Fraenkel Let. at 1. In any case, the government argues, Mr. Giacumbo's standing as a member of Local 843 has no impact upon the government's case.

Section 402 of the LMRDA, which governs enforcement, does not require that the complaining union member retain his or her union membership for the duration of any investigation and/or judicial action pursued by the Secretary. 29 U.S.C. § 482. As long as the complainant is a member of "a labor organization" when he or she complains to the Secretary, the requirements of § 402(a) appear to be met.

Moreover, courts have ordered that a new election be held even where the defeated challenger is no longer eligible to be a candidate. In *Telephone Workers*, the court ordered a new election even though the defeated candidate, whose complaint prompted the Secretary to file the action, had taken a new job which made him ineligible to run in the new election. 703 F.Supp. at 205, 210–11. Even though an intervening election had been held since a violation of § 401(g), the court found that a supervised election was the appropriate remedy: "[O]nly a supervised election could offer assurance that the officers who achieved office as beneficiaries of violations of the Act would not by some means perpetuate their unlawful control in

the succeeding election." *Id.* at 211 (citing *Wirtz v. Local 153 Glass Bottle Blowers Ass'n.*, 389 U.S. 463, 474–75, 88 S.Ct. 643, 649–50, 19 L.Ed.2d 705 (1968)). Guided by *Telephone Workers,* the Court concludes that Mr. Giacumbo's contested status as a member of Local 843 does not weigh against an awarding a new election.

*H. Summary Judgment is Appropriate Because No Issues of Material Fact Exist.*

Having concluded that Mr. Giacumbo's role in composing and/or distributing the "New Teamsters'" newsletter, the only controverted facts set forth by the Defendant, is not relevant to resolution of this action, the Court finds that summary judgment is appropriate.

■ Defendant's argument that § 402(c)(2), which permits a court to order a new election "after a trial upon the merits", precludes this Court from awarding that relief on a motion for summary judgment is without merit. Defendant has not cited any case in which a motion for summary judgment has been denied on that basis. Moreover, District Courts routinely grant summary judgment in cases involving violations of § 401(g). *E.g., Telephone Workers,* 703 F.Supp. at 202, 211, *Local 719,* 561 F.Supp. at 55, 63. Finally, delaying an order for a new election is inconsistent with the Congressional policy, discussed in *Local 153,* of preventing candidates who have benefitted from § 401(g) violations from becoming entrenched. 389 U.S. at 474–75, 88 S.Ct. at 649–50. As a result, Plaintiffs are entitled to summary judgment.

*I. To Remedy the Violation of § 401(g) that Has Occurred, the Court Orders that a New Election for Local 843 President Be Held Under the Secretary's Supervision.*

Since distribution of the Potter letter, issued at Local 439's expense, promoted a candidate in violation of § 401(g), the Court must declare the election null and void and order Local 834 to hold a new election under the Secretary's supervision pursuant to 29 U.S.C. § 482(c)(2). With respect to the timing of this new election, LMRDA § 402(c) establishes no deadlines. *See* 29 U.S.C. § 482(c).

■ As this Court has already noted in its discussion of the "unclean hands" doctrine, *supra,* ordering a new election subject to the Secretary's supervision is an equitable remedy, which is capable of being molded "to the necessities of the particular case." *Hecht Co. v. Bowles,* 321 U.S. 321, 329–30, 64 S.Ct. 587, 592, 88 L.Ed. 754 (1944). Moreover, this pragmatic, flexible approach finds support in the LMRDA itself. Section 402(c) provides that "so far as is lawful and practicable, in conformity with the constitution and bylaws of the labor organization."

■ The Secretary has proposed that this Court order Local 843 to conduct a new election within 120 days. Proposed Order, ¶ 2. Granting the Secretary's request would result in holding an election approximately eight months ahead of schedule. Under the Secretary's proposal, the candidate elected within 120 days would serve the balance of the three year term, *id.,* in other words, the eight months remaining until the regularly scheduled election in December, 1995.

While this Court "is concerned ... with the question of possibly unnecessary expense to the Union members" *Masters, Mates and Pilots,* 538 F.2d at 952 of holding a new election which will only remain in effect for a few months, LMRDA § 402(c) as a practical matter mandates that this Court order a new, virtually immediate election, rather than wait for the next regular election, scheduled for December, 1995. It would be anomalous to declare the December 2, 1992 election null and void, as required by § 402(c), but defer the new election for another year.

Under these circumstances, the Court finds that the policy of promoting free and fair union elections, embodied in the LMRDA, is best served by adopting the Secretary's recommendation and Ordering Local 843 to conduct a new election for the office of president, under the Secretary's supervision, within 120 days from the date of this Opinion.

*J. Plaintiff's Request to Be Reimbursed for the Costs of Prosecuting this Action is Denied, Without Prejudice.*

■ In their motion, Plaintiffs make a blanket request for this Court to award them

the costs of prosecuting this action. Plaintiffs do not cite any statutory authority for this award. Absent a more detailed request, the Court finds no basis for such an award. As a result, the Court denies, without prejudice, Plaintiffs' request for an award of costs.

### III. CONCLUSION

For the reasons stated in this Opinion, Defendant's motion for summary judgment is **DENIED;** Plaintiff's motion for summary judgment is **GRANTED;** the election held by Local 843 on December 2, 1992, is **DECLARED NULL and VOID;** Defendant is **ORDERED** to hold a new election for the office of President under the Secretary's supervision within 120 days from the date of this Opinion; and the Plaintiff's motion for costs is **DENIED, without prejudice.** An appropriate Order follows this Opinion.

**SO ORDERED.**

### JUDGMENT

This matter having come before the Court on cross motions for summary judgment, and the Court having considered the submissions of the parties, as well as the oral arguments heard on November 14, 1994; and

For the reasons stated in the Opinion accompanying this Order filed with the Clerk on this day; and

For good cause shown;

It is on this 17th day of November, 1994, **ORDERED** as follows:

1. Defendant's motion for summary judgment is **DENIED;**

2. Plaintiff's motion for summary judgment is **GRANTED;**

3. The election held by Local 843 on December 2, 1992, is **DECLARED NULL and VOID;**

4. Defendant is **ORDERED** to hold new nominations and an election for the office of President under the Secretary's supervision within 120 days from the date of this Order. All aspects of this election shall comply with Title IV of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), and insofar as lawful and practicable, be held in accordance with the Constitution and Bylaws of Local 843;

5. The Court shall retain jurisdiction to enforce the terms of this Order. To ensure that these terms have been complied with, the Secretary shall, after the supervised election is held, promptly certify to the Court the following: the name of the person so elected, and that such election was conducted in accordance with Title IV of the LMRDA, and insofar as lawful and practicable, in accordance with the Constitution and Bylaws of Local 843. Upon such certification, the Court shall enter an Order declaring that such person has been elected as shown by such certification. In the interim, the Court will direct the Clerk of the Court administratively to terminate this cause of action on the docket; and

6. The Plaintiff's application for attorneys' fees and costs incurred in prosecuting this action is **DENIED** without prejudice.